AUBREY, Superior Court Judge, v. HUSER, Court Clerk.

No. 33317. Dec. 14, 1948.

Dissenting Opinion Dec. 21, 1948.

*201 P. 2d 249.*

Lawrence Jones, of Bristow, Walter A. Billingsley, of Wewoka, Speakman & Speakman and Wallace & Collins, all of Sapulpa, Con Long, of Seminole, and Koch & Woodliff, of Henryetta, for plaintiff,

Jack Scott, County Atty., Seminole County, of Wewoka, and Charles E. Grounds, of Seminole, for defendant.

RILEY, Acting C. J. This is an original action brought by the superior judge of Seminole county to compel the court clerk of Seminole county to pay to plaintiff the compensation provided by law.

Plaintiff assumed the duties of superior judge of Seminole county, Okla., on January 13, 1947, for a term of four years. The defendant as the court clerk is the custodian of the court funds and is authorized to approve claims and issue vouchers payable from said funds.

Senate Bill 228, chap, 5A, tit. 20, S. L. 1947, p. 229 (20 O. S. A. §§145.1, 145.2) imposes the additional duty upon superior judges of the state of being parole advisers for their respective counties, and for the performance of the additional duty an additional compensation is made payable to them, as provided in House Bill 127, enacted by the same Legislature.

By the provisions of House Bill 127, chap. 5, Tit. 20, S. L. 1947 (20 O. S. A. §141.1), the annual salaries of judges of superior courts of this state are fixed in a sum equal to the salaries of district judges in the districts where such superior courts are located. Four thousand dollars ($4,000) of the annual salary is payable from the general fund of the respective counties, and all in excess thereof is payable out of the court fund of such county, provided the balance in such court fund is in excess of five thousand dollars ($5,000); otherwise, the remainder of such salaries is payable from the general fund.

It is agreed that plaintiff has performed the additional duties imposed upon him; that the court fund of Seminole county is sufficient with which to pay the compensation provided, and that plaintiff's claim for the month of September 1947, had been presented and disallowed.

Defendant contends that S. B. 228, supra, is a special and local law, regulating the affairs of counties in violation of the Constitution of Oklahoma, sec. 46, art. 5.

The determining factor is whether the provisions of the act operate uniformly upon the subject matter naturally falling within the scope of the legislation, or whether, to the contrary, there is an arbitrary discrimination or exclusion. Measured by this test, it appears that the legislation extends to all superior courts of this state presently existing, or such as may hereafter be established.

In Roberts v. Ledgerwood et al., 134 Okla. 152, 272 P. 448, in determining whether a legislative act was special and local, or general in its nature, we said:

"In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted."

Herein we find that the classification is not capricious or arbitrary. There is

neither an inclusion nor omission from the subject matter dealt with in the legislation. Consequently, it may not be said that any discrimination is made.

Therefore, under the rule in Burks v. Walker, 25 Okla. 353, 104 P. 544, reiterated in Oklahoma City v. Excise Board of Oklahoma County et al., 193 Okla. 189, 141 P. 2d 805, we conclude that the act, supra, constitutes general legislation and is neither special nor local as prohibited by section 46, art. 5, Constitution of Oklahoma.

It is urged that even if the provision of S. B. 228 (20 O. S. A. §§ 145.1, 145.2) are constitutional and valid, plaintiff, as a judge of the superior court of Seminole county, or any other such judge elected or appointed to office prior to April 8, 1947, the effective date of the act, would not be entitled to the increased compensation because of the prohibition of section 10, art. 23, Constitution of Oklahoma. The prohibition reads:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; . . . ."

In Phelps et al. v. Childers et al., 184 Okla. 421, 89 P. 2d 782, and Bond et al. v. Phelps, State Budget Director, et al., 200 Okla. 70, 191 P. 2d 938, the latter being a companion case, the application of the prohibition contained in section 10, art. 23, of the Constitution, supra, restricting a change in the salary or emoluments of any public official after his election or appointment, or during his term of office, was at length considered. In each of these cases it was held that the constitutional provision did not apply "where the new duties or services so provided in the act are foreign to or beyond the scope or range of and not germane to the duties of the office."

Hence, our inquiry in the case at bar is limited to the question as to whether the additional duties imposed by the provisions of S. B. 228 (20 O. S. A. §145.1) are, or are not, germane to the office of a superior judge.

That additional duties were imposed by the act, supra, there can be no doubt. By the terms employed within the first section of the act, the Legislature expressed its view that the duties so imposed were "in addition."

Prior to the enactment of S. B. 228, judges of the superior courts, in common with all other judges of courts of record of the state, had authority to suspend sentences of persons convicted of crimes, with the exceptions stated, in their respective courts. Tit. 22, O. S. A. §991. And all such judges were empowered to hear reports as to the conduct of such persons released by them and to revoke the order of suspension and enforce the original sentences imposed. Sec. 992, Id.

But under the provisions of S. B. 228, supra, the additional duty was devolved upon judges of superior courts of the state to act as parole advisers of all persons in their respective counties who had been paroled from penal institutions of the state, and to keep a record of such interviews with such persons and to make a report every six months to the Pardon and Parole Officer of the state.

In James, Auditor, v. Cammack, 139 Ky. 223, 129 S. W. 582, relied upon and quoted at length in Bond et al. v. Phelps, State Budget Director, supra, the additional duty imposed upon judges made them subject to assignment outside their circuits and within any part of the state. Extra compensation for the additional services was sustained, it being noted that the additional duties imposed were not a part of those pertaining to the regular jurisdiction of the court, and that the duty of being a special judge might be imposed upon any member of the bar.

In the instant case, the duty of being a parole adviser of any person paroled from a penal institution of the state is not within the duty of the judge of a

court of record, but that duty devolves primarily upon the Pardon and Parole Board, an independent agency (57 O. S. A. §332.1 et seq.), and the parole adviser to each person paroled from a penal institution of the state, as contemplated by the provisions of section 332.8, Id., and the Pardon and Parole Officer of the state (section 332.11, Id.).

As to persons within their respective counties where superior courts are located, the superior judge has no authority to revoke the parole of a person released from a penal institution of the state. That duty is executive and not judicial. 57 O. S. A. §332.12 et seq. Moreover, the additional duty imposed upon superior judges of the state to keep a record of interviews with all persons in their respective counties who have been paroled from penal institutions of the state, and to report every six months to the Pardon and Parole Officer of the state, is the provision for a service foreign to and beyond the scope and range of the duties theretofore devolved upon any judge of any court of record within this state.

Under the provisions of R. L. 1910, §4637 (57 O. S. A. §343), since repealed, the Pardon and Parole Board once had power to require certain information from a judge before whom a person was convicted, but the furnishing of such record and reports, like that required under the provisions of S. B. 228, supra, is in nowise judicial, but purely administrative in character.

The duty additionally imposed of making reports to the Pardon and Parole Officer is comparable to the duties devolved upon Justices of the Supreme Court, as considered in Phelps et al. v. Childers, State Auditor, supra, whereby certain Justices of the Supreme Court were authorized to make a compilation of procedural statutes, with annotations, for which they were paid an additional compensation during their term of office. That duty was held to be nonjudicial and therefore not germane to the office of a judge.

These additional duties are also comparable to those devolved upon members of the Corporation Commission, and considered in the companion case, by which members of the Corporation Commission were authorized to make an annotated compilation of all oil and gas laws of Oklahoma, together with general orders, rules and regulations adopted by the Corporation Commission pursuant thereto, for which the members of the Corporation Commission were adjudged to be entitled to an additional compensation during their term of office.

We can find no substantial difference in the character between the additional duties imposed by S. B. 228, supra, and those considered in the cases to which reference has been made. In each of those cases the additional duties were held to be nongermane. As measured by the rule prevailing, plaintiff is entitled to the writ as sought.

Let the writ issue.

BRANSON, Acting V. C. J., concurring by reason of decision in Bond et al. v. Phelps, State Budget Director, supra; and BASKIN, BASSMAN, and STAMPER, Special JJ., concur. BABCOCK, JOHNSON, SWEET, and POWELL, Special JJ., dissent.

———

POWELL, Special J. (dissenting). In an original action in this court, Bob Aubrey, judge of the superior court of Seminole county, Okla., seeks a writ of mandamus to compel Tess Huser, court clerk of Seminole county, to pay him compensation for services performed as provided for in House Bill No. 127 (20 O. S. A. §141.1), and Senate Bill No. 228 (20 O. S. A. §§145.1 and 145.2).

The defendant contends: (1) That said acts are special and local and are in violation of sections 46 and 59, art. 5, of the Constitution of the State of Oklahoma, and (2) that said acts attempt to raise the salaries of judges of the superior courts of Oklahoma during their present term of office, in vio-

lation of section 10, art. 23, of the Constitution of the State of Oklahoma.

The original opinion filed in this case and the opinion in the case of Bond et al. v. Phelps, State Budget Director et al., 200 Okla. 70, 191 P. 2d 938, were promulgated March 30, 1948; each of the cases involved similar points of law, but applicable to different fact situations. A rehearing was not requested in Bond v. Phelps, but rehearing was asked for in the within case. The attorney for the defendant, Tess Huser, court clerk of Seminole county, in his answer (filed herein December 3, 1948) to plaintiff's second petition for rehearing (filed herein November 15, 1948) simply says that in view of the opinion in Bond v. Phelps, he feels that the superior court judges are entitled to the increased compensation authorized by Senate Bill 228 (20 O. S. A. §§145.1, 145.2).

It is felt that the majority of the court was extremely liberal in the interpretation of the term "nongermane", in that case, and that in the within case, the majority has gone too far and fails to consider the true meaning of the terms "germane" and "nongermane," as defined by standard dictionaries, and particularly by this court in the cases of Finley v. Territory, 12 Okla. 621, 73 P. 273, 280; Board of Commissioners of Creek County v. Bruce, 51 Okla. 541, 152 P. 125, Ann. Cases 1918E, 1060, and Phelps et al., Justices, v. Childers, State Auditor, et al., 184 Okla. 421, 89 P. 2d 782. Also the following statutes: 10 O. S. A. §§116-a, b and 126-1,3; 57 O. S. A. §343, now repealed.

The question being one of public interest, I feel compelled to set out my views.

The legislative acts involved read:

"House Bill No. 127

"(20 O. S A. 141.1):

"From and after the passage and approval of this Act, the annual salaries of the Judges of the Superior Courts of the State, as now authorized by law, shall be in the sum equal to the salary of the District Judges in the District in which such Superior Court is located; payable monthly by the several counties in which such courts are located, as follows:

"Four Thousand Dollars ($4,000.00) per year from the general fund of such respective county, and all in excess of Four Thousand Dollars ($4,000.00) from the court fund of such county, in the event there is a balance in such court fund in excess of Five Thousand Dollars ($5,000.00), otherwise from the general fund of such county."

"Senate Bill No. 228 (20 O. S. A. §145.1 and §145.2):

"Sec. 145.1: In addition to the duties now imposed by law upon the judges of the Superior Courts of the State of Oklahoma, it is hereby provided that said judges shall act as parole advisors of all persons granted suspended sentences from their respective courts and all persons in their respective counties who have been paroled from the penal institutions of this state. It shall be the further duty of such judges to keep a record of each interview with such persons and to make a report of said interview every six months' period to the Pardon and Parole officer of the State of Oklahoma."

"Sec. 145.2. It is further provided said Judges of the Superior Courts shall be paid, in addition to the salary now provided by law, as compensation for said additional duties hereby imposed upon them, the additional salary provided for the House Bill No. 127 of the Twenty-First Session of the State Legislature of Oklahoma."

The provisions of the Constitution involved read:

Article 5, sec. 59: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

Article 5, sec. 46, in part: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . . Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns. . . ."

Section 10 of article 23 of the Oklahoma Constitution reads:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed; provided, that all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified."

We will first consider the question of whether or not Senate Bill No. 228 is violative of section 10, art. 23 of the Constitution of the State of Oklahoma. The basic case in this jurisdiction involving this question is that of Board of County Com'rs of Creek County v. Bruce et al., 51 Okla. 541, 152 P. 125, which holds:

"A public officer is bound to perform the duties of his office for the compensation fixed by law. This is true as to additional duties imposed upon the office by the Legislature after he enters upon his term, provided such duties are germane to the office."

This case quotes with approval Mechem on Public Officers, where it is said:

"An officer who accepts an office to which a fixed salary or compensation is attached is deemed to undertake to perform its duties for the salary or compensation fixed, though it may be inadequate, and if the proper authorities increase its duties by the addition of others germane to the office, the officer must perform them without extra compensation. *Neither can he recover extra compensation for incidental or collateral services which properly belong to or form a part of the main office. . . .*" (Italics ours.)

Also quoted with approval is a leading case on the subject, being Moore v. Nation, 80 Kan. 672, 103 P. 107, 23 L. R. A. (N. S.) 1115, 18 Ann. Cas. 397, which case is authority for the hereinafter quoted principle of law

(cited with approval by another Oklahoma case, Kramer, County Treasurer, v. Gypsy Oil Co., 68 Okla. 212, 173 P. 804), as follows:

"The duties of an officer include all of those that fairly lie within its scope; not merely those which are necessarily involved in the accomplishment of the main purpose of the office, but those, also, which although incidental and collateral, naturally and properly serve to promote and benefit the performance of the principal duties. Constitutions and statutes seldom define with precision the scope of any office."

We believe it will be helpful in determining what duties may be said to be germane and what duties may not be classed as germane to quote from the opinion of Burch, J., in said case, found at 103 P. at page 112:

"The duties of an office include all those that fairly lie within its scope; not merely those which are necessarily involved in the accomplishment of the main purpose of the office, but those also which, although incidental and collateral, naturally and properly serve to promote and benefit the performance of the principal duties. Constitutions and statutes seldom define with precision the scope of any office. The place it usually occupies in political systems of like character is some guide. The common law is relied upon to supply many incidents, and others are left to inclusion by necessary implication. In time the need becomes apparent for further and better definition, and it is said new duties are added, or 'attached' germane to those already in existence. In reality the true scope of the office already included such duties. All that is accomplished is to make active that which before was latent. If the office do not potentially embrace the duty, the duty appertains to another office. Before any duty can be classified as falling within the scope of an office, it must belong there, and nothing can be added or attached to an office that does not belong there. Whatever the standard of classification—in aid of the usual functions, incidental, collateral, appertaining, or germane to or connected with the principal duties, in line with the main purpose, or other test—when tested the duty belongs to the office, is official, and the incum-

bent must perform it, or it does not belong to the office, is unofficial, cannot lawfully be attached to the office, and need not be performed if an attempt to attach it to the office be made. . . ."

This rule has been approved in the case of Phelps v. Childers, supra, and that case is approved in the case of Reford Bond et al. v. Roger Phelps, State Budget Director, et al., supra.

In applying the above rule to the facts in the case now before us, our rationalization, of course, cannot be with mathematical certainty, because t h e term "parole adviser" is not further defined by the act, and the duties appear to be of a mixed judicial and ministerial nature.

Plaintiff, in brief for rehearing, contends that parole adviser and probation officer are synonymous. The only place in the state statutes defining probation officer is in the special act applying, as it works out, to Oklahoma and Tulsa counties (10 O. S. A. 116a, 116b) requiring that they be qualified in social case work, make arrests, investigations, and do other work of a specialized and nonjudicial nature.

To aid us in determining whether or not the additional duties prescribed by Senate Bill No. 228, supra, are germane or nongermane to the official duties of superior court judges, we must resort to analogy and consider the duties of such judges with regard to persons who have been convicted of crime as provided by any other statutes prior to the act. See: 20 O. S. A. §§161, 162, 182, applying to the superior court of Seminole county, and 22 O. S. A. §§991-992, as follows:

"991. Whenever any person shall be convicted in any court of record for any crime other than murder, manslaughter or arson, the Judge trying said cause, may, after sentence, suspend said judgment and sentence, and allow said person so convicted to be released upon his own recognizance, provided, that no such person shall be so released, who has not, prior thereto, borne a good reputation, or who may

have been, prior thereto, convicted of any crime in any state or territory of the United States"

"992. . . . Any person so released as provided in the preceding Section shall be required to report to the judge of the court wherein convicted, at each succeeding term during the pendency of said judgment, or when required by the Court or Judge, and prove to the satisfaction of said Judge by two citizens of said County of good reputation, that said person has not violated any law, and has been a quiet, peaceful and law abiding citizen. Provided, that if it shall be made to appear to said Judge that said person so released has been guilty of a violation of any law after his said release, or is habitually associating with lewd or vicious persons, or is indulging in vicious habits, in that event said Court shall cause a warrant to be issued for said person, and he shall be delivered forthwith to the place of confinement to which originally sentenced, and shall serve out the full term for which he had originally been sentenced."

We will first consider the proviso of the act where the superior court judges are to act as parole advisers of all persons granted suspended sentences from their respective courts.

The superior court judges have the authority for reason, as provided by 22 O. S. A. §992, supra, to cause any person given a suspended sentence by them, to be sent on to a penal institution to serve out the sentence imposed. The Pardon and Parole Board does not have any jurisdiction over such persons. The duties of the superior court judges with reference to convicted persons to whom they may have given suspended sentences were clearly defined by the statutory provisions immediately above quoted, being enacted prior to Senate Bill No. 228, supra, and the new proviso that they act as advisers to such criminals must be considered in the sense of conferring with them rather than acting in their behalf, trying to reform them or giving them any legal advice other than warning them. Any other construction might be in conflict with their duties as judges and would be repugnant to the public

interest by reason of the duties of the judge when sitting as a court, and the power of the judge to revoke a suspension of sentence.

We conclude, then, that the provision that the superior court judges act as parole advisers of all persons granted suspended sentences from their respective courts are germane to their duties, in that there is no substantial difference between the duties imposed by this provision of the act and their duties in this regard previous to the act.

We now consider the proviso whereby the superior court judges are to act as parole advisers of all persons in their respective counties who have been paroled from the penal institutions of this state.

Whether the duties under this proviso are germane or nongermane to the duties of their office turns in great part on the scope of their services as parole advisers to such parolees. Such duties might involve convictions from the superior court or from other courts and from other counties of the state. The superior judge could not revoke a parole or do other than advise the parolee, and make his report to the Pardon and Parole Officer. In the first instance it was the superior court judge who would use his powers of discretion and determine whether or not to incarcerate the criminal, but here the Governor of Oklahoma by advice and recommendation from the Pardon and Parole Board would take any final action in regard to a parolee; that is, whether to revoke or not revoke his parole. Additional parole advisers other than the superior judge might be appointed. See Title 57 O. S. A. §§332.1-347.

If the activities required of the superior court judge requires only a conference with the paroled person for the purpose of eliciting information to be transmitted to the Pardon and Parole Board, for the object of enabling said Board to determine with other sources of information whether or not the parolee is in fact carrying out the terms of his parole, then such additional duties are not substantially different from their duties prior to the enactment of Senate Bill No. 228, and are germane.

On the other hand, if the duties of parole adviser require the giving of legal advice, or necessitate the superior court judges qualifying themselves in a great social program for attempting the rehabilitation of those persons convicted of crime, to the extent that such duties might conflict with the judges' functions as courts and be repugnant to such duties, or if they are to perform the duties of a probation officer, then without question such duties would be nongermane.

But are the new duties of the superior court judge with respect to parolees from state institutions substantially different from their duties prior to Senate Bill No. 228, supra, with respect to persons given suspended sentences from their court? By the provisions of 22 O. S. A. §991-2, supra, all judges of courts of record in Oklahoma, as before indicated, have had authority to suspend sentences of persons convicted of crime, with named exceptions, but such persons had to report to the judges at each succeeding term, which means twice a year, and the judge would hear evidence of two reputable witnesses as to the criminal's activities, and it may be assumed that a record of each conference would be made. Under the new duties he would interview more criminals twice a year, keep a record and send such report to the Pardon and Parole Board twice a year.

There is no assurance that there would be any additional duties, except the furnishing to the Pardon and Parole Board of a copy of the record impliedly now being kept by the superior judges, covering persons convicted in their courts, and whom they may have given suspended sentences, if any have received suspended sentences. At times there might be parolees from penal institutions of the state who would take up residence in the counties having superior courts, at other times there

might not be such persons in such counties. Are the superior court judges to be paid the extra salary regardless of whether there are parolees in their counties or not? The act is silent. It is also silent as to how the superior court judges may become acquainted with the fact of residence or nonresidence of such parolees, and as to the definition of parole adviser.

The act in question is at once distinguishable from the case of Phelps v. Childers, supra, which involved House Bill 239 of the 1937 Legislature, pertaining to the compilation of the civil, probate and appellate statutes of Oklahoma, to be performed by the justices elected in November, 1934, for the vital reason that prior to said time, no duties in any way similar had been imposed upon Justices of the Supreme Court, and the added duties were properly, under the germane nongermane rule, found to be foreign and beyond the scope and range of the duties of the office. Further, the duties were only temporary and not intended to be added to the duties of Justice of the Supreme Court, and only applied to three of the nine members, and said duties were to expire on the second Monday of January, 1941, said act being now obsolete.

In the present case the duties are apparently to be permanent duties added to the tasks of judges of the superior courts, and while not judicial in nature, such added duties are clearly in aid of the functions of the office, are incidental, are collateral, do appertain, are connected with the principal duties, are in line with the main purpose and promote the main purpose, are not different in scope from previous duties,—are germane. And all future judges elected or appointed to said offices after the effective date of the act undisputedly must perform the duties provided, because as to them such duties become germane by operation of law. See Phelps v. Childers, supra.

Ordinarily, the functions of court are to apply laws to controversies and administer justice (Black Law Dict., 3d

Ed., Words & Phrases), and whereas the duties of superior court judges as parole advisers could develop into a material departure from the field of remedial justice and materially enlarge the functions of the judge as distinguished from the court, we must recognize the fact as heretofore indicated, that in the past, courts of record in Oklahoma have performed duties advisory and counteractant in nature over persons who have been convicted of crime, and not unlike in principle to the functions of a juvenile court, whose duties are paternal in nature over delinquent and neglected children. Such duties have always been treated as incidental or collateral services properly forming a part of the main office. (22 O. S. A. §991; 10 O. S. A. §116-a, b; also, 57 O. S. A. §343, now repealed.)

The program with reference to parolees as provided by Senate Bill No. 228, supra, it will be observed, is limited to superior courts, and this court will take judicial notice of the fact that there are but three counties of the 77 having superior courts. Such courts are created usually to fill a need in counties having a great center of population, relatively speaking, outside the county seat, and to take care, many times, of a temporary situation, as evidenced by the fact that such courts have been, after a time, abolished. That possibility is always present, depending on the changes in local need. But this unfortunate class (persons convicted of crime) we may expect to have with us always.

Also worthy of notice is a peculiarity in classification, being "superior courts" rather than "courts of record" or "parolees"; thus limiting the application, as it works out, to only three counties, as stated, and the Legislature apparently was attempting to provide for a local situation peculiar to counties having superior courts, and at most the functions of the judge as "parole adviser" are limited in scope and may be in aid of or additional to the regular "parole adviser" that under the general law

must be appointed for every person paroled from the penal institutions of the state. See 57 O. S. A. §332.8.

Said Justice Hayes in Burks v. Walker, 25 Okla. 353, 109 P. 544, concerning the act creating the original superior courts:

"The act was passed to relieve the overcrowded dockets of the larger and more densely populated counties of the state and to expedite litigation in such counties. Had the Legislature made the act to apply to every county in the state, it would have imposed a useless burden and expense upon a large percentage of them. . . ."

We see, therefore, that the program, so far as the courts are concerned, is very limited in scope, and the additional duties may have been added to previous duties of superior court judge to equalize the volume of work between the courts in these particular counties. We cannot question the wisdom or purpose of the Legislature in adding these additional duties to only judges of the superior courts, or ascribe to the Legislature the attempting to do something indirectly that could not be done directly. Phelps v. Childers, supra.

We may take notice of the fact that in counties having large cities and where the complications are great, provision has been made for the courts to appoint probation officers, and whereas in such cases the duties of such officers have been more definitely defined and are quite extensive in scope, they serve under the courts, the courts appoint them, and may remove them. See Title 10 O. S. A. §§1160a and 126.3.

The judges in such counties, it will be observed from reading the cited act, have the responsibility of passing on the prescribed qualifications of the probation officers and must receive their reports and advise with them and supervise their work, and the Legislature does not in the act provide for additional pay for such service, apparently deeming the additional duties germane to their previous duties.

We may further consider the fact that for many years in the past we had a statute, since repealed, being R. L. 1910, sec. 4637, 57 O. S. A. §343, providing:

"When an application is made to the board for pardon it may require the judge of the court before which the conviction was had or the county attorney by whom the action was prosecuted to furnish them without delay with a statement of the facts of the trial and any other facts having reference to the propriety of granting or refusing the pardon."

We feel that this repealed statute may be considered as showing that the Legislature has treated such additional duties germane to the office of courts of record.

Also, as indicated, we may consider the general law, 57 O. S. A. §332.8, and now in force and applying to all parolees in every county in the state, including the three having superior courts, which reads:

"No recommendation to the Governor for parole shall be made in relation to any inmate in a penal institution in the State of Oklahoma until satisfactory arrangements have been made for both suitable employment, *as well as the selection of a proper person who shall be designated as parole advisor* to counsel and advise with the said parolee. The Pardon and Parole Officer shall render every reasonable assistance to any person making application for parole, in helping to obtain for said applicant suitable and fit employer and employment, *as well as a fit and proper parolee adviser.*" (Italics ours.)

Suppose a superior court judge refused to perform the additional duties provided by the act under consideration, and an action in mandamus was instituted to force such compliance. This court has consistently held that mandamus will not issue except where the duty sought to be enforced is clear and undisputable. See Board of County Com'rs of Creek County et al. v. City of Sapulpa, 128 Okla. 555, 20 P. 2d 147.

What specific acts could the judge be compelled to perform? We believe the

act itself answers the query, without doubt, to wit: Advise with the parolee twice a year, if there should be such parolee, and send a report of the record of such conference or conferences to the Pardon and Parole Officer. The act provides no rules for guidance, so what the judge might say to the parolee, or the questions asked him, or the admonishments given, would, as has been the case under provisions of 22 O. S. A. §§991, 992, rest with the conscience and sound discretion of the particular judge. There are additional labors provided and nothing more.

Apparently the Legislature has taken the view that the duties of courts, as to persons charged with crime, do not end with trial, conviction and sentence, but if the convicted is to be turned loose on society prior to serving the full sentence, the courts have a further duty in the public interest, and hence the enactment of Senate Bill No. 228, supra.

A consideration of the foregoing forces the conclusion that the new duties added to the labors of superior court judges as to parolees are not substantially different from their duties and actual functions prior to the enactment of Senate Bill No. 228, supra, and that for such reason such added duties are germane, and the plaintiff is not entitled during his current term of office to the additional salary provided for in House Bill No. 127 of the Twenty-First Session of the State Legislature of Oklahoma.

I do not want to be understood as opposing public servants being paid salaries commensurate with their services, and I feel that considering their duties, it is only fair that the salaries of the superior court judges should have been increased as provided by 20 O. S. A. 141.1, supra. They will be entitled to such raise at the beginning of a new term. Adequate pay is necessary in order to induce competent and desirable attorneys to seek election to judicial positions. However, it is insisted that it is dangerous to read into the term "nongermane" a meaning not justified by the previous holdings of this court, already pointed out, and which enables the said judges to receive this increase in pay prior to a new term, and in effect, evade section 10 of art. 23 of the Oklahoma Constitution.

For the foregoing reasons, I respectfully dissent.

I concur with the majority in holding Senate Bill No. 228, supra, not violative of sections 46 and 59, article 5, of the Constitution of Oklahoma, for the reasons set forth in that opinion.

I am authorized to state that BABCOCK, Special J., concurs with the views above expressed.