** Summary ** VOTING MACHINE USE CONSTITUTIONAL Title 26 O.S. 274 [26-274] (1971), relating to the use of vertical column voting machines, is valid and constitutional. The Attorney General has considered your request for an opinion. where in you ask in your letter of January 10, 1972, the following question: "Is Title 26 O.S. 274 [26-274] (1971) valid and constitutional?" You stated in your letter that the voting machines used in Tulsa County offer a vertical columnar presentation of individual candidates for office These machines do not have capabilities of straight party voting where more than two parties are involved. The pertinent portion of Title 26 O.S. 274 [26-274] (1971), states in part: "Voting machines must be so constructed as to permit straight party voting as well as mixed or split tickets, except that voting machines with a vertical columnar presentation of the individual candidates for office, if there are more than two (2) political parties on the ballot at a general election, shall not be programmed so as to permit straight party voting by the use of a single lever, button or other device." Article V, Section 46 of the Oklahoma Constitution states in part: "The Legislature shall not except as otherwise provided in this Constitution, pass any local or special law authorizing: . . . "For the opening and conducting of elections, or fixing or changing the places of voting; . . ." Article V, Section 59 of the Oklahoma Constitution states: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." There have been several cases applying and interpreting these two constitutional provisions and which are of assistance in determining this particular question. In the case of Elias v. City of Tulsa, Okl., 408 P.2d 517 (1965), the Court held in syllabus one: "It is not essential in order that a law be general in its operation as distinguished from local or special, as contemplated by Article V, Section 46, Article V and Section 59, Article V of the Oklahoma State Constitution that it be universal in its application and operate the same in every section of the State and upon all persons, individuals or corporations alike. On the contrary, the Legislature may classify for legislative purposes, but a classification so adopted must be neither arbitrary nor capricious and must bear reasonable relation to the object to be accomplished." In the case of State v. District Court of Mayes County, Okl., 440 P.2d 700 (1967) the Court held in syllabus one: "In order to be general in its nature and to have uniform operation, as contemplated by Article V, Section 59, Oklahoma Constitution, a law need not be universal in its application and operate the same in every section of the State and upon all persons alike; the Legislature may classify for legislative purposes, but the classification adopted must be neither arbitrary nor capricious and must bear a rational relation to the object sought to be accomplished." The Court went on further to say on page 704: ". . . But if a statute operates upon a class, the classification must be reasonable and pertain to some peculiarity in the subject matter calling for legislation. It cannot be capricious or arbitrary. As between the persons and places included within the class upon which the law operates and those excluded from it, there must be some distinctive characteristics warranting a different treatment and affording a practical and real basis for discrimination." (Emphasis added) The Court went on further to say on page 705: "While counties and cities may, for legislative purposes, properly be classified on the basis of population, or population coupled with some other factor, such as assessed valuation, the classification must not be arbitrary but founded upon real and substantial distinctions, bear some rational relation to the subject matter and be uniform in general in its application." (Emphasis added) In the case of Haas v. Holloman, Okl.327 P.2d 655 (1958) the Oklahoma Court held in syllabus two: "In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the State. A law may be general and have a local application or apply to a designated class if it operates equally upon all subjects within the class for which it was adopted. But, where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnishes a practical and real basis for discrimination." (Emphasis added) In the case of Excise Board of Washita County v. Lowden, 189 Okl. 286, 116 P.2d 700
(1941), the Oklahoma Court held in syllabus six: "A law may be general and have only local application or applications." (Emphasis added) This case dealt with the setting of salaries of county officers according to population. In Grable v. Childers, 176 Okl. 360, 56, P.2d 357 (1936) the Court held in syllabus one: "A statute which by reason of the subject to which it relates may have a direct effect on a relatively small number of persons is nevertheless a general law if it operates equally and uniformly upon all brought within the relations and circumstances for which it provides." In Sheldon v. Grand River Dam Authority, 182 Okl. 24, 76 P.2d 355
(1938), the Court held that the creation of a conservation and reclamation district for a small portion of the State was not a local and special law. In Aubrey v. Huser,201 Okl. 60, 201 P.2d 249 (1949), the Court held is syllabus one: "Title 20 O.S. 145.1 [20-145.1] and 20 O.S. 145.2 [20-145.2] [20-145.2], imposing additional duties upon judges of superior courts of the State of Oklahoma and providing additional compensation for the performance of such duties, is not violative of the Constitution of Oklahoma, Article V, Section 46, restricting the passage of any local or special law regulating the affairs of counties." This case dealt with legislation creating extra duties for superior judges. In the case of Isaacs v. Oklahoma City, Okl.,437 P.2d 229 (1967), the Court held in syllabus nine: "Urban redevelopment act, in being applicable only to cities with a population in excess of one hundred thousand is not a special or local law and is not arbitrary or capricious and is not unconstitutional on these grounds." The plaintiff objected for the reason, among others, that to deprive the citizens of the city with the population of a hundred thousand of the right to vote on such an issue is unreasonable and arbitrary in violation of the equal protection of the law guaranteed by theFourteenth Amendment of the United States Constitution and the requirement of the Oklahoma Constitution that laws of a general nature shall have uniform application throughout the State. The Oklahoma Supreme Court disagreed with these contentions. The cases mentioned above involved legislation that dealt with restricted groups of people or restricted areas but applied to all members of the class equally throughout the State. The next four cases deal with legislation that singled out a particular county or counties and had no valid basis for a distinction in the classification. In the case of Leach v. Board of Commissioners of Mayes County, 173 Okl. 270, 47 P.2d 596
(1935), the Court held in syllabus one: "A special and local act which increases the salaries of county officers in one county and by its terms provides additional compensation for such officers in said county to that provided for such officers in the other counties of the State, and the increase provided for therein not being based upon any classification of county district population or any other distinctive characteristic, is purely arbitrary and capricious, and is in violation of Section 59, Article V, of the Constitution." (Emphasis added) In Protest of Chicago, R I and P Railway Company,164 Okl. 239, 25 P.2d 690 (1933), the Court held in syllabus ten: "Statutes fixing the salaries of each county commissioner in Ok lahoma County at Four Thousand Dollars ($4,000), is unconstitutional for the reason that such salaries are fixed by general statute and the special situation such act is designed to meet does not possess characteristics impossible of treatment by general legislation." In syllabus nine, the Court held: "The supposed necessity on which an act is based, in order to avoid the constitutional inhibitation against local or special laws, must be practical and not imaginary, and the special situation such act is designed to meet must possess characteristics impossible Or treatment by general legislation." (Emphasis added) In Baker v. Braden,165 Okl. 12, 24 P.2d 293 (1933), the Court held in syllabus two: "Statute fixing the compensation of county commissioners of Creek County, is local and special legislation and invalid and unconstitutional and in violation of Section 59, and subdivision B Section 46, Article V, of the Constitution." The Court held in syllabus four: "Where an act of the Legislature excepts from the operation of the general laws of this State one or more counties without any fixed basis for such a discrimination, and not good reason appears why all should not be subject to the same rule, it is invalid under Section 59, Article V, of the State Constitution, which provides that laws of a general nature shall have a uniform operation throughout the State. " In Johnson v. State Election Board, 197 Okl. 211, 167 P.2d 891 (1946), the Oklahoma Court held in syllabus one: "That portion of statute beginning with the second paragraph of said section and providing for the method of nominating district judges in Tulsa County as unconstitutional as offensive of sections 59 and 46, Article V, of the State Constitution." To summarize these last four cases, there must be a distinctive characteristic justifying different classifications and treatment. With reference to your question, it must be determined whether or not the distinction concerning horizontal and vertical machines is based upon a trait or characteristic warranting different treatment. The vertical machine is constructed in such a way that it can accommodate straight party voting for only two parties. In the event of a third party ticket, the candidates of one party could not be selected on a straight line basis, while the other two parties could, thus clearly creating a disadvantage for the third party. In other words, the purpose of this particular language is to give all parties an equal chance for equal treatment in the event of more than two parties in the election, and to prevent giving two parties an obvious advantage over the third party. Since machines with a horizontal presentation of candidates do not have this problem, there is a distinct and distinguishing characteristic between vertical and horizontal machines. This distinguishing characteristic would appear to warrant this particular legislation, in order to prevent a third party from being placed in a position of obvious disadvantage and discrimination. Concerning the use of the vertical type machines, there are no legislative restrictions on their use, nor is there any legislative mandate for uniformity in the use of voting machines. It is therefore the opinion of the Attorney General that your question be answered in the affirmative in that Title 26 O.S. 274 [26-274] (1971) is valid and constitutional. (Todd Markum)