CASE 9. — ACTION BY LOGAN COUNTY AGAINST J. S. FLOWERS.—April 27, 1910.

## Flowers v. Logan County

Appeal from Logan Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Judgment for plaintiff, and defendant appeals.— Reversed.

1. Counties—Expenditure of County Funds—Illegal Manner— Recovery of Money—Estoppel.—Where the fiscal court of a county and the taxpayers have for many years permitted public money to be expended for legal purposes, but in an illegal manner only, the county is estopped to recover the money from the officer making the expenditure; it appearing that the expenditure was in good faith, and that the county had received value therefor.

2. Counties—Officers—Expenditure of Funds.—Where a county officer has expended public money for a legal purpose, but in an illegal manner, the burden is on him in a suit by the county to recover the fund to show a proper application thereof.

3. Counties—County Funds—Expenditure.—Where a member of the fiscal court of a county was directed to make repairs to certain roads in his district, the fact that he paid the cost of the repairs out of an appropriation made to construct a bridge did not entitle the county to recover the same from him; the money used having been a part of the road and bridge fund of the county.

4. Counties—Fiscal Court—Roadwork—Payment for Extra Service.—Ky. St. section 1840, gives the various fiscal courts jurisdiction to appropriate county funds to erect and repair necessary public buildings, to build bridges, etc., and section 4306 (section 5439), gives them general supervision of the public roads and bridges of the county. Section 1845 (section 2979) provides that the members of the court, except the county judge, shall receive $3 a day for each day they are engaged in holding fiscal court, and for each day in which they are engaged in actual attendance at the meetings of committees of the court, except that no compensation for attendance on committees shall be allowed except in counties maintaining a free system of turnpikes under the control of the fiscal court. Held, that where a county maintained a system of free turnpike roads, though not extending to every part of the county, the fiscal court had authority to appoint each member a committee of one to supervise the repairs to be made on such roads within his district, and, he having been paid per diem for services rendered in good faith in that behalf, the county could not recover the money on the theory that members of the fiscal court could not be allowed anything for their services except their attendance on sessions of the court.

5. Constitutional Law—Public Policy.—There is no public policy of a state which prohibits its Legislature from doing anything which its Constitution does not prohibit.

6. Officers—Employment—Extra Services.—The common-law rule that a public official cannot employ himself to do work for the public is derived from the implied limitations on the powers of a trustee and is repealed by a statute expressly authorizing the officer to do the act objected to.

BROWDER & BROWDER and S. R. CREWDSON for appellant.

R. W. DAVIS, J. S. RHEA and S. Y. TRIMBLE for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellant was a justice of the peace, and a member of the fiscal court of Logan county from January 1898, to January, 1906.  During that time the county built a new courthouse, demolished the old building and sold the material, and made other improvements upon the public square, by grading it, putting down concrete walks, setting out trees, and so forth. There was not a supervisor of roads or bridges during the period.  The county poorhouse was managed by a committee appointed by the fiscal court.  That body also levied a road and bridge tax, which was apportioned to the several magisterial districts for the maintenance of the public roads therein, including certain turnpikes.  'Squire Flowers was appointed a committee of the fiscal court to expend the money appropriated to the Russellville district for repairing roads, and for building a bridge.  He was also appointed a member of the committee to superintend the building of the new courthouse, and of the poor farm committee.  He was appointed sole committee to sell the old material in the abandoned courthouse building and to grade and have made the other named improvements upon the public square at the county seat.  The orders of the fiscal court making these appointments sometimes denominated the members as ''commissioners,'' and sometimes as ''committee.'' 'Squire Flowers sold the old material, and applied the proceeds to the county purposes under the orders appointing him committee—either to roads, or to the poor farm.  The fiscal court from time to time entered orders appropriating gross sums for the public work; that is, for such and such road districts, and for grading, and paving the public square, and the like, and for building bridges.  The orders allowed the sums to the members of the committee, or to the

"commissioner" or "commissioners" as they were
sometimes called. Some $13,000 were thus placed in
the hands of 'Squire Flowers to be expended for
the purposes named. From time to time he report-
ed his actions to the fiscal court  showing how the
money had been applied. The court by orders of rec-
ord approved his conduct. The court also allowed
him various sums by way of compensation for his
extra services as road committtee, courthouse com-
mittee, and poor farm committee. These allowances
in no  instance  exceeded three dollars a day, and
sometimes were less. After . the change of adminis-
tration, the county brought this action against appel-
lant Flowers to recover from him all the money al-
lowed to him as above stated. This action was based
upon the notion that the appropriations to Flowers
as commissioner or committee to be expended upon
public improvements were unauthorized, and were
void. Likewise, that the allowances to him for his
services other than for those rendered in attending
sessions of the court, were illegal and void as being
in excess of the statutory regulation, as well as being
in contravention of public policy.

The affairs of the county, whether honestly ádmin-
istered, had been, to say the least of it, loosely con-
ducted; that is, there were not such records of ac-
counts kept as would be a proper check upon  the
public expenditures, and in many instances no record
at all was kept. The practice of letting individuals
of the fiscal court expend the public money as they
deemed necessary was irregular as well as dangerous.
Confusion necessarily resulted.   Opportunity was
undeniably made for peculation and extravagances.
Public accountants  employed by the new adminis-
tration made up a balance sheet of the county's af-

fairs covering the period in question. It did not show, nor is there proof here now to show, that any of the public money had been misspent. It merely pointed out what had been appropriated, what raised by taxation and otherwise, and how applied, so far as the records then disclosed. It included a well-grounded criticism of the loose methods  of book-keeping which had prevailed, as well as the irregular and illegal procedure by which the appropriations had been attempted to be applied.

Appellant by his testimony, and by what is a more satisfactory character of evidence, his passbooks kept by the bank where he deposited the money, shows satisfactorily that every dollar which had been placed in his hands by the fiscal court had been applied for the purposes designated by the court, and where none was designated, as in the instances where he sold the material in the old courthouse building, it was applied to other county purposes, all of which was reported to the fiscal court, and approved by  that body by entries of record. Logan county contends in this suit, that notwithstanding such application, it ought to recover the money, because the manner of its appropriation by the fiscal court was contrary to the statute, and was therefore void. The opinion in Boyd County v. Arthur et al., 118 Ky. 932, 82 S. W. 613, 26 Ky. Law Rep. 906, is relied on by appellee as controlling authority. In that case the  Boyd county fiscal court had done, so far as appropriating public money for public road purposes, apportioning it among the magisterial districts, and appointing the magistrates commissioners to expend it, just what had been done by Logan county here. But the proceeding in the Boyd County Case was radically different from the nature of this action. We held in

Boyd County v. Arthur that the attempted delegation of power of the court and jurisdiction over the public roads by the fiscal court to its several members was contrary to the statute, and on appeal by the county judge we held that the orders should be reversed and set aside; furthermore, we held that injunction would lie to prevent the irregular application of the public money. We are yet as firmly of the opinion there expressed as when it was written. Further observation has confirmed the unwisdom, the impolicy, the illegality of the course pursued by those fiscal courts. But where the fiscal court and the taxpayers have stood by for many years and allowed the public money to be expended by that kind of proceeding, and it has actually been applied to the purposes for which it was raised and appropriated, it is quite a different question whether the county will be permitted to recover the money. The vice in the proceeding was not in doing something not authorized by, or forbidden by, the law, but was doing that which was allowed in a manner not authorized by law. If the thing done had been illegal, or not warranted by law, however beneficial it might have been, the public ought not to be estopped to deny the validity of the expenditure; or, where the thing is authorized, but it is proposed to do it in an unauthorized manner, upon seasonable complaint those charged with doing the thing will be compelled to execute it as the law directs, and prohibited from doing it otherwise. But where the thing is authorized to be done, and is done by the party charged with doing it, but done in a manner contrary to that directed by the statute, the court will not compel the official to pay back the money and let the public continue to enjoy the benefits of its expenditure. If it

is made to appear that the expenditure was in good faith, and the public has got that which it was entitled to, good conscience forbids the recovery. The law, therefore, denies it.

Upon the facts in this record the  circuit court found that the public money in the hands of 'Squire Flowers had all been accounted for, had been applied to legal ends, and that the county had received, and the public enjoyed the benefits from the expenditures in as full a manner as if the most exact compliance with the statute had been observed.  We do not feel authorized from this record to disturb that finding. The burden was upon appellant to show a proper application of the money.  No presumption is indulged in his behalf under such circumstances.  He did not keep accounts of his dealings, nor separate accounts of the various funds given into his charge.  Ordinarily that circumstance would  warrant an inference unfavorable to him.  He was an old man, a farmer who had large business interests, and who was a successful business man.  He did not know how to keep books, it seems.  But his knowledge of how to build and how to repair roads, and how to buy material and employ labor, how to sell what he had to sell, and how to drive a good bargain in making contracts for public works, was first class.  He was also diligent, attentive to the public affairs, and exacting on its behalf.   He was a forceful, practical man, whose judgment and services in these matters appear to have been really valuable.  It seems as if he was the leading spirit in the movement in his county for public improvements.  No charge is made against his honesty.  No doubt is entertained as to his business sagacity.  No question was suggested as to his vigilance.  The only point now urged is that

he, in ignorance, followed the course which had obtained in his county for many years, and assumed to discharge a trust which ought not to have been delegated by the fiscal court, and that he failed to keep books of itemized entry of all his receipts and expenditures. What he did concerning his accounts was to deposit to his credit in bank as commissioner or committee (the account was "Jas. S. Flowers, Com.") all money appropriated for his disbursement. Against these deposits he drew checks to those persons performing labor on the public works under his charge, or who furnished material. With the burden imposed on him to show satisfactorily the proper expenditure of the money, appellant has done that to the satisfaction of the trial court and to this court.

One of the items which was originally embraced in the suit, but later withdrawn, was the appropriation to the appellant of $1,650 to build a bridge across Muddy river at Duncan's. Appellant had discounted that warrant to Geo. L. Gillum & Son. He used $1,108.17 in building the bridge. $260 he paid out in repairing public roads in his district, which he had been directed by the fiscal court to have repaired. The remainder he asked to have applied on account of his services. The warrant which he had sold to Gillum & Son was repudiated by the county. Gillum & Son brought suit upon it against the county treasurer, and against this appellant Flowers. The court adjudged that although the warrant was void, and the assignment of it was without authority, yet as all the parties had acted in good faith, and the county had actually received the benefit of the expenditure of $1,108.17 in the building of the bridge, it was compelled to pay to Gillum & Son that much of the warrant sued on. Milliken v. Gillum &

Son, 122 S. W. 151, 135 Ky. 280.  No opinion was expressed on the claim of Flowers against the county. That was a question reserved.  Upon the same principle as announced in that case, the sum expended upon the road should be credited to appellant.  He was ordered to have the work done, and had it done. He has paid for it out of the public money (a part of the "road and bridge fund" of the county).  No good could come of letting the county recover the money not spent on the bridge, and then repay it to the same person because it was owing him for work for which the county was legally responsible.

The several fiscal courts of the state are given jurisdiction to appropriate county funds authorized by law to be appropriated; to erect and keep in repair necessary public buildings; to build bridges and keep them in repair; to provide a poorhouse and farm (section 1840, Ky. St. [Russell's St. section 2795]); and by section 4306, Ky. St. (Russell's St. section 5439), those courts have general charge and supervision of the public roads and bridges of the county. The section continues: "The public roads shall be maintained either by taxation or by hands allotted to work thereon (or both) in the discretion of the respective counties."  The roads and bridges of Logan county were kept up by taxation and allotment of hands.  Most of the roads were not macadamized. But especially in Russellville precinct  there were some six or eight turnpike roads, aggregating considerable mileage.  They had been built many years ago at the expense of the precinct in which they were located, under a provision of a special statute. There had never been tollgates upon them.  They were a part of the public road system of the county, free to public travel, maintained by the fiscal court in the

manner in which in its discretion was thought best; that is, whether by taxation or by allotment of hands. Section 1845, Ky. St. (Russell's St. section 2979), reads: "The members of the court, except the county judge, shall be entitled to three dollars per day for each day they are engaged in holding fiscal court, and also for each day in which they are engaged in actual attendance at the meetings of the committees of the said court, said compensation to be allowed by said court and to be paid out of the county levy: Provided, that no compensation shall be allowed members of said court for attendance at the meetings of the committees thereof except in those counties that maintain a free system of turnpikes under the control and supervision of the fiscal court."

The contention of appellee is, and such was the view seemingly entertained by the court below, that the members of the fiscal court cannot be allowed anything for their services except their attendance upon sessions of the court. It was held that Logan county does not maintain a free system of turnpikes under the control and supervision of the fiscal court. The county does maintain a system of turnpike roads, although the system has not yet been extended to every part of the county. These roads are free for public travel. The turnpikes of this state as originally operated were toll roads, whether owned by the state or the counties, or private corporations, or by the counties, state and private ownership jointly, as was frequently the case. In later years provision had been made by law for the counties' acquiring the entire ownership of such roads, and when so acquired, as has been done in most instances, they may be operated by the counties as toll roads or as free roads. If operated as free roads, then they are

kept up at the public expense, by taxes levied, or by
hands allotted from the citizenship of the county.
Logan county  never had any toll roads, yet it did
contain turnpike roads.  These roads, forming a part
of the system of public highways, are operated with-
out toll-gates, and are therefore free turnpike roads.
The county has been extending  the system a little
at a time, until now it is said that it has nearly 100
miles of such roads.  As that class of highways re-
quires more care and attention than the ordinary dirt
road, and as they are directly under the supervision
of the fiscal courts, the Legislature has deemed it
expedient to allow  the counties the option of two
ways of superintending the work: One, by appoint-
ing road supervisors; the other, by direct control by
the fiscal court without  supervisors.  Where  the
latter method is adopted, obviously, much additional
work is thrown upon the members of the fiscal court.
Unless the court traveled over the county as a body,
accompanied by its clerk and records, it must do its
work through committees, which the section of the
statute just quoted allows to be done, as well as al-
lows the members of the committees, although mem-
bers of the court, to be paid three dollars a day for
each day they actually attend upon such committees.
The size of the committees is wholly within the dis-
cretion of the court, as is the necessity for them.
Nor does the statute confine the pay to members of
road committees.  In counties where the fiscal courts
have so much work to do as where there are free
turnpikes in the county, the Legislature has seen fit
to allow the members of all committees to be paid.
Whether that was judicious legislation is not for the
determination of this court.  Whether the persons
named as committees are called commissioners, or

committee, does not seem to us to be material. The fact is their relation to the court and its work is that of committees. It was seemingly so construed by the fiscal court and its members. .Misdescriptions will not be allowed to defeat a manifest intention to do a legal thing, where, if the misdescription was literally applied, it would operate to defeat it. Appellant rendered the services; they were received by the fiscal court, and ordered by it; it allowed the statutory compensation, and has paid it. The services were valuable, and rendered in good faith. Appellant ought not to have been required, as by the judgment appealed from he was, to pay back the money paid to him for his work as member of various committees of the fiscal court.

Boyd County v. Arthur is again cited and relied upon by the appellee. That case does not show whether there was a system of free turnpike roads in Boyd county. The court assumed, in absence of such allegation, that there was not, and held that in that event the members of the court could not be appointed to do work for the court and to be paid by the county. That was because a statute forbade it in that state of case (section 1749, Ky. St. as frequently applied by this court. Wortham v. Grayson Co., 13 Bush, 53; Mitchell v. Henry Co., 124 Ky. 833, 100 S. W. 220, 30 Ky. Law Rep. 1051; Pulaski Co. v. Sears, 117 Ky. 249, 78 S. W. 123, 25 Ky. Law Rep. 1381; Daviess Co. v. Goodwin,, 116 Ky. 891, 77 S. W. 185, 25 Ky. Law Rep. 1081. There is no public policy which prohibits the Legislature from doing anything which the Constitution does not prohibit. The idea that a public official cannot employ himself to do work for the public is the common-law view of the implied limitations on the powers of a trustee. But

where the statute expressly authorizes the act, then the common law on that point stands repealed, and, as there is nothing in the Constitution forbidding it, the question becomes one solely of legislative discretion, into the wisdom of which this court has neither the jurisdiction nor the inclination to inquire.

Whereupon the judgment is reversed on the original appeal and affirmed on the ·cross-appeal. Remanded, with directions to dismiss the petition.