**Orville FANNIN et al., Appellants,**

**v.**

**David L. DAVIS et al., Appellees.**

Court of Appeals of Kentucky.

June 26, 1964.

Rehearing Denied Dec. 18, 1964.

As Modified Dec. 18, 1964.

Jesse K. Lewis, John C. Anggelis, Lexington, for appellants.

J. Blaine G. Nickell, Nickell & Walter, West Liberty, William A. Young, Frankfort, Walter E. Mobley, Sandy Hook, D. B. Caudill, Morehead, Thomas D. Theobald, Jr., Grayson, for appellees.

STEWART, Judge.

This is an appeal from a judgment of the Elliott Circuit Court. The action was filed by Orville Fannin, as a justice of the peace of Elliott County, suing as a member of the fiscal court on behalf of the county, and also suing as a citizen and taxpayer for the use and benefit of the county. He will be referred to as appellant.

The defendants, appellees herein, included former and then members of the Elliott Fiscal Court, namely, Delbert Kitchen, Lova Ison, Robert F. Miller, E. H. Maggard and Ray H. Binion, and their sureties; the county judge, David L. Davis, and his sureties; the county court clerk, Estill Hutchinson, and his sureties; the county treasurer, Mrs. Blanche Adkins, and her sureties; the county attorney, Virgil Redwine; the county jailer, Levi Waggoner; and the sheriff, Bill Y. Manning.

A recovery of various sums was sought from these parties of county funds alleged to have been illegally paid out either to them or on their authorization. Thereafter, on August 31, 1955, Elliott County brought an action against Orville Fannin, as a justice of the peace, and his surety, to recover certain county funds alleged to have been illegally paid out on his authorization. These actions were consolidated. Whayne Supply Company and Peoples Bank of Sandy Hook were made third-party defendants, on motion of appellant.

In the judgment entered it was ordered that Estill Hutchinson, the county court clerk, refund $168 to the county; that this clerk also pay $125 to the county, which sum had been paid into county court by Virgil

H. Redwine, the county attorney, in the action against him; and that as to all other parties named in the consolidated actions, the suit be dismissed at the cost of appellant.

We believe it will be easier to relate the facts that pertain to each issue as it is separately discussed hereinafter, rather than undertake to make a general prefatory statement. One matter of general interest noted in appellees' brief is that the average yearly gross revenue of Elliott County for 1950 through 1953, the years in controversy, was $27,000. Appellant is attempting to recover an amount exceeding $122,146, which sum is roughly $19,000 in excess of the total income of Elliott County for this period of time.

The issues, as presented by appellant, are:

1. Did the trial court err in holding that the fiscal court had the right in October of 1949 to change the previous order of May, 1949, fixing the salaries of the county officers for the ensuing term?

The trial judge found as a fact that during October, 1949, the fiscal court caused its order of May 3, 1949, limiting maximum compensation of the county officials, to be amended on its face so as to increase the salaries of the county judge from $150 to $200 per month, of the county attorney from $125 to $200 per month, of the county court clerk from $12.50 to $25 per month, and of the jailer from $33.33 to $50 per month.

As to each of the officials named, the statutory provisions then, as well as now, in effect required their salaries to be fixed not later than the first Monday in May in the year in which each of them was elected. See KRS 25.250, KRS 69.250 and KRS 67.-120(1), (1942 Edition).

There is no showing in the record of the reason for the payment of a salary to the jailer. We assume such an order was an allowance of compensation within the

purview of KRS 67.130. If so, it was incumbent upon the fiscal court to fix the jailer's annual salary at the same time the yearly income of other officials was established. See Perkins v. Cumberland County, 294 Ky. 737, 172 S.W.2d 651.

The attempt of the Elliott Fiscal Court to substitute a new salary schedule for the above four officials in October, after their pay scale by the prior order of May had been set up in the manner required by law and had become binding by reason thereof, was a void act. See Stokely v. Fleming County Fiscal Court, Ky., 323 S.W.2d 844.

However, at a meeting of the Elliott Fiscal Court, held June 30, 1950, the compensation of the county judge was set at a maximum amount of $3600 per year, that of the county attorney at $2400 per year, that of the county court clerk at $600 per year, and that of the jailer at $600 per year. These changes were authorized by an amendment to Section 246 of the Constitution of Kentucky, voted by the people at the general election in 1949, which made possible the payment of compensation not to exceed $7200 per annum to county officials. And the 1950 session of the General Assembly thereafter enacted legislation which provides that in each county the fiscal court prescribe by order the maximum compensation a county officer, who was in office June 30, 1950, may receive for the remainder of his term. See KRS 64.530(1), KRS 64.680.

The salary revision of the four officials, pursuant to KRS 64.530(1) and in conformity with the order of the fiscal court of June 30, 1950, was valid, but it did not become effective until July 1, 1950. As a result, there was a time lag of six months from January 1, 1950, until June 30, 1950, during which time these officials were paid illegal sums by virtue of the void October, 1949, order.

It therefore follows that appellant may recover in behalf of Elliott County the

sum of $300 from David L. Davis, the county judge, $450 from Virgil H. Redwine, the county attorney, $75 from Estill Hutchinson, the county court clerk, and $160.02 from Levi Waggoner, the jailer.

■ 2. Did the trial court err in holding that appellant, representing the Elliott County taxpayers, was estopped to recover certain allowances made to the magistrates of Elliott County, all appellees herein?

During their term of office from 1950 through 1953, the five magistrates of Elliott County ordered the payment of certain claims to themselves, allegedly for work done and for supplies furnished to the county in connection with the roads and bridges. The specific amounts received during the years mentioned were $2620.34 by Magistrate Miller, $1084.82 by Magistrate Binion, $519 by Magistrate Ison, $276 by Magistrate Maggard, and $107 by Magistrate Kitchen.

In Trimble County by Shaver v. Moore, Ky., 275 S.W.2d 50, it was pointed out that KRS 61.210(1) forbids a magistrate from contracting with the fiscal court, of which he is a member, to do or supervise road work or furnish any material to the county for road or bridge improvement. All sums allowed as described were illegally received. Therefore, appellant is entitled to recover in behalf of Elliott County from each magistrate the amount of money paid each.

3. Did the trial court err in refusing to enforce the terms of KRS 68.300 in the face of facts showing that budgetary funds were exceeded in the total sum of $27,484.40?

The proof showed that, during the years 1950 through 1953, the fiscal court entered orders which directed the county court clerk to issue warrants in payment of all claims presented to him, without regard to the question of whether any warrant might overdraw the budgetary item or appropriation against which it was drawn.

On November 11, 1950, the fiscal court entered the following order relating to the 1950–51 budget:

"The court upon being informed by the clerk that certain funds of the 1950–51 general fund budget were already used so that no more warrants could be written without exceeding said funds:

"Now, therefore, on motion of Justice Ison and all justices present which is a majority agreeing it is ordered by the court that the *said clerk is directed to write warrants* for any claims that have been passed by said court or any claims in the future that may be passed regardless whether *the budget is exceeded in that particular fund or not.*" (Emphasis added.)

■ We do not find in the record a similar order for each of the three fiscal years thereafter; but it is undisputed the anticipated income of the county was overspent during the time periods involved in this litigation. Both the county court clerk and the county treasurer were charged with the duty of keeping accurate records of all transactions affecting the budget (KRS 68.-340(1) and KRS 68.340(2); and the county court clerk's quarterly report (KRS 68.-370) and the county treasurer's monthly report (KRS 68.360) fully apprised the members of the fiscal court at all times of the condition of the county finances. Thus, the members, under the facts shown, must be deemed to have wilfully exceeded the budget funds set up by the fiscal court for each of the four fiscal years involved. Therefore, to the extent these budget appropriations were overdrawn, such expenditures were illegal.

Who is liable to the taxpayers of Elliott County for these unlawful expenditures? The answer to this question is clearly set forth in part in KRS 68.300, which reads: "Any appropriation made or claim allowed by the fiscal court in excess of any budget fund, and any warrant or contract

not within the budget appropriation, shall be void. No member of the fiscal court shall vote for any such illegal appropriation or claim. The county treasurer shall be liable on his official bond for the amount of any county warrant willfully or negligently signed or countersigned by him in excess of the budget fund out of which the warrant is payable."

When KRS 68.300 is applied to the facts stated Mrs. Blanche Adkins, the county treasurer during the period of time involved, must be deemed to be liable on her official bond for the amount of any county warrants willfully or negligently signed or countersigned by her in excess of the budget fund out of which the warrant was payable. See Breathitt County v. Cockrell, 250 Ky. 743, 63 S.W.2d 920, 92 A.L.R. 626.

In 43 Am.Jur., Public Officers, sec. 306, p. 111, it is stated: "Public officers who have charge of public funds and public money are charged with the duty, as trustees, to disburse and expend the money for the purposes and in the manner prescribed by law"; and any public officer who authorizes the illegal disbursement of public funds is personally liable therefor. See 67 C.J.S. Officers § 118, pp. 409–410. See also KRS 68.110(3). If the county funds disbursed unlawfully by the members of the fiscal court cannot be recovered from the persons to whom these payments were made, then the members themselves will be liable, jointly and severally. We can perceive of no legal basis for imposing liability upon the county court clerk.

4. Did the trial court err in holding that the county treasurer was not liable for the payment, without an order of the fiscal court, of $27,286.90 in warrants from county funds from 1950 through 1954?

The practice adopted was that each year the fiscal court entered a blanket order directing the county court clerk to issue warrants when the fiscal court was not in session, upon the request of either the county judge or any one of the magistrates. This procedure was followed: No fee bills or written claims were presented (or at least such do not appear in the record) and no orders of the fiscal court were made authorizing any of these payments. Nor was any order later entered by the fiscal court ratifying any of these payments.

The argument made by the appellees who brought about these disbursements is that Elliott County, once having benefited from the expenditure of these funds, should not be permitted to recover any part of this same money. The difficulty we have in accepting this argument is that we have no evidence before us which in any respect informs us whether this money was spent, in the many instances testified to by the county court clerk, for a lawful county purpose.

In McKechnie v. Canada, 198 Ky. 807, 250 S.W. 111, this Court said: "[N]o valid appropriation can be made except by a majority of the members of the court acting together as a court, at a meeting held for that purpose." See also McDonald's Adm'x. v. Franklin Co., 125 Ky. 205, 100 S.W. 861; and Scoville v. Baugh, 27 Ky.Law Rep. 319, 84 S.W. 1146, which affirm this same principle.

In McDonald's Adm'x. v. Franklin Co., cited above, a paper was signed by the county judge and the magistrates of Franklin County, who constituted its fiscal court, but not by them when the fiscal court was in regular session, directing the county court clerk to issue a warrant of $450 to one Pat McDonald. This was done. The acts of these officials were pronounced a nullity and the county was permitted to recover the amount of the warrant from the estate of Pat McDonald, who in the meantime had died. This Court there said:

"* * * The fiscal affairs of the county are not, as seems to be supposed, confided to a certain number of magistrates, but are given solely to the fiscal court of the county (or to county com-

missioners, if the people of the county so elect). This tribunal acts as a body. It can only act at stated or called public meetings, at which a majority of the magistrates constituting it must be present, and a majority of those present concurring. (Citation omitted.) It must keep a record of its acts. It must show by whom it was holden, and be signed by its presiding officer, or its acts are null. * * *"

It would seem the same liability would attach to the county treasurer and the members of the fiscal court in respect to these numerous invalid disbursements, as would attach in the case of claims allowed and paid in excess of the budget funds, set up for the years in question mentioned above. Recovery may also be had from the persons to whom the payments were made, if such is not barred by the applicable statute of limitations as was allowed by McDonald Adm'x v. Franklin Co., cited above.

■ Of course recovery may not be had, in respect to a particular item, against both the members of the fiscal court and the person, or persons, to whom the illegal payments were made.

5. Did the trial court err in its holding concerning the transfer of money from the sinking fund to the general fund?

At the beginning of 1950, Elliott County had outstanding two $1000 road and bridge bonds. A special tax levy of 20¢ for sinking fund purposes to retire these bonds had been set up when the bonds were voted. These bonds were presented for payment and paid on October 5, 1955. Thereafter, the special levy was discontinued. Between January, 1950, and January, 1955, various sums totalling $8955.58 were transferred from the sinking fund to either the general fund or road fund. These transfers were tacitly approved by the fiscal court and all were acquiesced in by the county budget commission, although not all of them were authorized by orders entered on the fiscal court order book.

KRS 68.290 sets forth the procedure which may be resorted to in shifting money from one budget fund to another, and from a defunct sinking fund account to one devoted to another legal county purpose. It reads:

"The fiscal court, subject to the approval of the county budget commission, may transfer money from one budget fund to another to provide for emergencies. The order of the fiscal court making the transfer shall show the nature of the emergency and the reason for making the transfer. Neither the fiscal court nor the commission shall have any power to transfer money from any sinking fund or special fund raised for a specific purpose until the obligation or purpose for which the fund was raised has been satisfied."

■ We conclude the manner and form in which the transfers were made were neither in keeping with statutory requirements nor with good fiscal practices; however, since it appears from the fiscal court records that all of the moneys thus transferred were expended for legal purposes, in payment of just and proper items of indebtedness of Elliott County, we cannot say there was an unlawful diversion of the surplus withdrawn from the sinking fund.

■ The surplus remaining after the object of a levy has been accomplished is treated as a part of the general fund of the county, and becomes available for general county use, notwithstanding Section 180 of the Constitution of Kentucky, forbidding the diversion of taxes from the purposes for which they were levied. See KRS 68.120; Field v. Stroube, 103 Ky. 114, 44 S.W. 363, 19 Ky.Law Rep. 1751.

6. Did the trial court err in failing to hold members of the fiscal court liable for the loss of tax funds due to the fiscal court's attempt to exonerate or correct certain assessments claimed to have been wrongfully made?

■ The record shows that the fiscal court entered orders attempting to release certain named persons from the payment of taxes on property assessed to them. Since KRS 133.130 vests in the *county court* (our emphasis) exclusive authority to exonerate erroneous assessments, any orders of the fiscal court seeking to accomplish this result were null and void. The trial court concluded there was no basis for the imposition of individual liability upon members of the fiscal court who voted for the orders of exoneration.

We believe the members of the fiscal court did not become liable for their acts under the circumstances in diverting this money, $315 in amount, away from Elliott County, if in fact they did divert the money. Furthermore, it was not proven that the assessments which were exonerated were valid ones, and we are unable to assume that Elliott County lost any taxes by reason of voiding them.

7. Did the trial court err in holding the provisions of KRS 64.410(1) were directory only in respect to Bill Y. Manning, the sheriff?

Appellant sought to recover $2640.27 from Bill Y. Manning, which sum represented the total of fees paid him as Elliott County sheriff from 1950 through 1953. It seems that written, but unsigned, fee bills were presented to the fiscal court for a portion of these fees; and that payment of the balance was made pursuant to the written direction of the county judge.

KRS 64.410(1) reads: "The fee-bills of every officer shall be made out at length, in figures and in plain English, and signed by the officer in his official capacity."

Appellant cites Goodlett v. Anderson County, 267 Ky. 166, 101 S.W.2d 421, 425, where this Court said: "When a claimant has a claim against a fiscal court, he must itemize it, and then point out the statutory provisions for its payment. He must be able to say, 'Here's the service, here's

the statute, now pay me.'" Appellant contends all the payments in question made to Manning were illegal, for the reason that this statute was not rigidly complied with, and should be recovered by Elliott County.

■■ Appellees argue that the statute is "directory," and we are inclined to accept this view. Generally, a statute is regarded as "directory" if it relates to some immaterial matter or if it does not reach the substance of the thing to be done and if, by an omission to observe it, the rights of those interested will not be prejudiced. See Middleton's Adm'x v. Middleton, *297 Ky. 109, 179 S.W.2d 227*. In Wait v. Southern Oil & Tire Co., *209 Ky. 682, 273 S.W. 473* it was pointed out that, ordinarily, the provisions of statutes outlining and prescribing the procedure to be followed by a public officer are considered and held to be directory.

■ In the present instance, there is neither argument nor proof that Manning received fees greater than or other than those allowable by law, or that he was paid fees for services not actually rendered by him. Only the method of collection is questioned here, and we believe the contention for a recoupment by Elliott County of the money paid him is without merit.

■ 8. Did the trial court err in refusing to give a judgment against Peoples Bank of Sandy Hook for $12,000, allegedly borrowed from that bank by the fiscal court in violation of section 157 of the Constitution of Kentucky?

In 1954, the fiscal court, of which appellant was a member, voted to borrow $12,000 from this bank. The loan was made and a note executed. Before this suit was filed $8000 had been paid on the note. Appellant sued the bank for $12,000; the remaining $4000 was paid on the note during the pendency of the litigation. The trial court dismissed the action.

Appellant contends that such borrowing contravened the provisions of Section 157 of the Constitution of Kentucky, as it exceeded the limit of the county's power to go into debt for that year; that such a transaction was void and unenforceable; and that under KRS 68.100(4), any money paid under any such contract may be recovered by the county.

The bank relies upon George A. Eyer & Co. v. Mercer County, D.C.Ky., 292 F. 292, which was an action to recover $50,000 loaned to a county and evidenced by a note. Recovery was allowed against the county, the court there saying: "Section 157 (of the Constitution of Kentucky) invalidates voluntary debts of a municipality. It has reference solely to such indebtedness. It has nothing to do with involuntary obligations created on the principles of unjust enrichment. In other words, it invalidates the note in suit if it comes within its prohibition. But the obligation of the defendant to return the money obtained from plaintiff upon the mistaken idea that it had the power to borrow it, on the principle of common honesty, is not within such prohibition. Municipalities as well as other artificial persons and real persons are subject to such principle."

The taxpayers of Elliott County have not lost any money by the transaction between the county and appellee bank. The county used $12,000 of this appellee's money for a lawful purpose, namely, for the purchase of the hereinafter mentioned road machinery. When it repaid the money, it was only doing what justice and equity required that it should do. Certainly the county should not prosper at this appellee's expense.

9. Did the trial court err in refusing to grant a recovery of money paid to Whayne Supply Company for the purchase of road machinery?

In March, 1954, the fiscal court entered into a lease-purchase agreement with appellee, Whayne Supply Company, for the acquisition of certain road machinery. The county thereafter exercised the option to purchase the equipment and paid $12,000 (nearly the full purchase price) and received delivery of the machinery in March, 1954. The machinery has been in constant use on the county roads since then. Appellant sued for the return of this money to the county, on the theory that the purchase contract was illegal because no advertisement for bids was made as provided in KRS 178.050 and because the machinery was not purchased from county road funds or from proceeds of bonds issued for that purpose as provided in KRS Chapter 179. Also, appellant claims the contract was never approved by the fiscal court.

If the purchase contract is held to be void, the lease contract would still be in effect (Whayne Supply Co. v. I. H. Gregory, Ky., 291 S.W.2d 835) and all unpaid rent from 1954 to the present would be due, and appellee, Whayne Supply Company, would be entitled to possession of the equipment. Furthermore, KRS 179.180 allows the lease of machinery by a fiscal court without the requirement of a bid.

The trial judge correctly dismissed this action as to appellee, Whayne Supply Company.

Unquestionably duplications exist in the record of this case as to many items sought to be recovered in behalf of Elliott County. For instance, it is contended, during 1950 through 1953, the fiscal court disbursed $27,484.40 in excess of the budget funds set up for the respective fiscal years, whereas, during that same period it is asserted $27,286.90 of county money was paid out under the blanket orders we have held were void. If the latter sum should be recouped in full by the county, it might result that there would be no payments in excess of the budget funds chargeable against the fiscal court and the county treasurer, save for a nominal amount. Other amounts that are in controversy may also be included in these two sums.

We have no way of determining the correctness of the numerous payments argued, pro and con as to their validity, by the litigants. In our approach to this case we have striven to lay down general principles in respect to the facts as we interpret them. Therefore, we are remanding this case with directions that a thorough audit be made of the fiscal years involved and that the case be judicially reconsidered in the light of such an audit.

Wherefore, the judgment is reversed for consistent proceedings.