**Orville FANNIN et al., Appellants,**

v.

**David L. DAVIS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 24, 1967.

John C. Anggelis, Anggelis, Collis & Bunch, Lexington, for appellants.

William A. Young, Frankfort, J. Blaine Nickell, West Liberty, for appellees.

PALMORE, Judge.

In Fannin v. Davis, Ky., 385 S.W.2d 321, 323 (1964), a judgment dismissing certain claims asserted in behalf of the taxpayers of Elliott County against several of its officers and former officers was "reversed for consistent proceedings." Further proceedings in the circuit court culminated in another dismissal of the claims, whereupon the plaintiffs again appeal to this court.

Though it may not dispense with the necessity of reading our previous opinion in order to understand this one, we shall briefly recapitulate the proceedings to date.

In 1953 the appellant Orville Fannin was elected as one of the justices of the peace (hereinafter called magistrates) for Elliott County. In 1955 he and a group of citizens and taxpayers of the county brought this action against the county judge, county clerk, county treasurer, county attorney, all magistrates who had served since January of 1950, the sheriff who had served from 1950 through 1953, the jailer, and other parties including the sureties of those defendants who had executed official bonds. The relief sought was recovery of various sums alleged to have been illegally expended from the county's funds.

Another suit filed later by the county attorney in behalf of the county against Fannin, in which Fannin counterclaimed and asserted a third party complaint against most of the same parties named as defendants in the first suit, was consolidated with the pending action.

The major items in controversy, and upon which relief was denied in the first judgment, were as follows:

1. Salary increases paid out of the Road and Bridge Fund (hereinafter R & B) to the county judge ($300), county attorney ($450), county clerk ($75) and jailer ($100.02) [1] during the first six months of 1950.

2. $4800 paid to the county judge as that portion of his salary paid out of R & B at the rate of $100 per month during his term of office from 1950 to 1954.

3. The following sums allowed and paid to the county judge and magistrates out of R & B for services performed or materials furnished by or through them in connection with work on the county road system:

| | |
|---|---|
| Judge Davis | $ 218.92 |
| Squire Miller | 2620.34 |
| Squire Ison | 519.00 |
| Squire Maggard | 276.00 |
| Squire Binion | 1084.80 |
| Squire Kitchen | 107.00 |

4. Expenditures in excess of amounts budgeted:

| Year | GF (General Fund) | R & B | Totals |
|---|---|---|---|
| 1949–50 | $1684.85 | $ 1339.20 | $ 3024.05 |
| 1950–51 | 2685.32 | 2840.72 | 5526.04 |
| 1951–52 | 1208.58 | 8129.16 | 9337.74 |
| 1952–53 | 1214.53 | 4974.15 | 6188.68 |
| 1953–54 | 2908.21 | 492.88 | 3401.09 |
| | $9701.49 | $17,776.11 | $27,477.60 [2] |

---

1. The figure of $160.02 appearing in 385 S.W.2d at p. 325 is a typographical error.

2. This is the figure developed by the proof, though in the first opinion it appears as $27,484.40. Cf. 385 S.W.2d at p. 325.

5. Transfers from the R & B Bond Sinking Fund to GF totalling $10,155.56[3] over the fiscal years 1950–51 through 1953–54.

6. Attempted exoneration of several tax assessments.

7. $2640.27 paid to the sheriff without proper fee-bills.

8. $27,286.90 paid without specific authorizing orders.

9. $13,911.25 paid for road work without supporting affidavits and certification as required by KRS 179.400. (All of these payments are included also in Item 8, above.)

10. $12,000 paid to the Peoples Bank of Sandy Hook in satisfaction of an unauthorized loan to the county.

11. $12,000 paid to Whayne Supply Company for the acquisition of road machinery. (This was the $12,000 borrowed from the Peoples Bank, Item 10 above.)

█ On the first appeal this court expressed the opinion that the denial of recovery on items 5, 6, 7, 10 and 11 as enumerated above was correct. No reference was made to items 2 and 9, and a review of the appellants' brief on that appeal indicates they were not argued. Under the rule that an adjudication settles not only those errors relied upon for a reversal, whether mentioned in the opinion or not, but also all errors "lurking in the record" which might have been but were not expressly relied upon, rejection of the claims represented by the latter two items must be considered as having been approved on the first appeal. City of Louisville v. River Excursion Co., 253 Ky. 95, 68 S.W.2d 792, 795 (1934).

With respect to the remaining items in controversy, it was stated in principle that if the facts and figures were correct the county was entitled to recover from the persons who had received the illegal payments and from the county treasurer, the members of the fiscal court, and their respective sureties. It was pointed out, however, that duplications were bound to exist, and the cause was remanded "with directions that a thorough audit be made of the fiscal years involved and that the case be judicially reconsidered in the light of such an audit."

Upon return of the proceedings to the circuit court a sharp difference in opinion developed as to the proper construction to be given the opinion and directions issued by this court. The plaintiffs, who had appealed and secured a reversal, contended that the authority of the trial court was limited to an audit for the purpose of eliminating duplications, following which they were entitled to a judgment for the corrected amounts. The defending parties, placing considerable stress on the direction that the case be "judicially reconsidered" and upon other excerpts from our opinion, took the position that all questions of liability remained open for redetermination on the basis of the whole record as supplemented by the audit. To complicate the problem, the Elliott County court house had burned to the ground in 1957, and most of the records necessary to a real audit had been destroyed in the fire.

Acceding to the defendants' suggestion, and over the plaintiffs' objection, the trial court on February 3, 1966, entered an order directing *the fiscal court* of Elliott County to conduct an audit of the county's fiscal affairs for the years 1950 through 1954 and, if possible, to ascertain the answers to certain specified questions concerning receipts and disbursements. The fiscal court submitted its report on September 8, 1966, which consisted of a copy of a resolution unanimously adopted by it on September 2, 1966, together with a statement that the questions propounded

3. The $8,955.58 figure given in the first opinion apparently is in error. Cf. 385 S.W.2d at p. 327.

to it by the circuit court could not be answered with any greater certainty than as set forth in the resolution.

The resolution recited by way of preamble that the fiscal court had examined the depositions given by the county court clerk in the first (and only) trial of this proceeding, had interrogated under oath "a very substantial number and representative cross-section" of the persons shown to have been recipients of the allegedly unauthorized expenditures, and had likewise examined persons who had been members of the fiscal court during the period under inquiry, from all of which investigation it concluded that (a) there had been no fraud, unjust gain, bad faith or improper motives on the part of any official of Elliott County in connection with the transactions in question, (b) the county had received a full measure of value in goods and services for all of the expenditures, and (c) although there may have been departures from statutory procedures, all payments "were made for the purpose for which the encumbent Fiscal Court of Elliott County could properly have expended the public funds and revenues of the county." Following this preamble the resolution concluded as follows: "the Fiscal Court of Elliott County does hereby approve, ratify and confirm the expenditure by any and all of the public officials of Elliott County holding office during the years 1950 through 1954, inclusive, of any and all the public funds and revenues of Elliott County in the expenditure and disbursement of which such public officials participated in or during any of the years last mentioned."

In its findings of fact the trial court accepted as correct the factual conclusions reached by the fiscal court. Relying on Flowers v. Logan County, 138 Ky. 59, 127 S.W. 512 (1910), and Land v. Lewis, 299 Ky. 866, 186 S.W.2d 803, 159 A.L.R. 601 (1945), it determined that the fiscal court's ratifying action on September 2, 1966, was valid and absolved the defendants of all liability. Judgment was thereupon entered dismissing the complaint, and this appeal followed.

We find the judgment to be manifestly in error. It ignores the guiding principles of substantive law stated in our first opinion and is based upon a procedure that we do not regard as consistent with the first mandate. Acknowledging the imprecision and possible ambiguities in our own attempt to provide guidance upon remand of the case, we are of the opinion nevertheless that when an audit was directed the obvious meaning was that it be conducted by or under the supervision of the trial court, with the right of participation by the litigants, at least through exceptions and appropriate hearings. It was inappropriate, in any event, to refer the matter to the fiscal court, which if it was at all subject to the orders of the circuit court was nonetheless a real party in interest in the litigation, and whose members, as successors in office to several of the defendants, could hardly be expected to conduct a judicially disinteresetd investigation of their predecessors.

As a matter of fact, the conclusions reached by the fiscal court in 1966 were not essentially different from or founded upon more substantial evidence than those reached originally by the trial court in 1957. The 1966 resolution added one thing alone, and that was the attempted ratification of any and all irregular expenditures made during the period theretofore in litigation.

Though our first opinion sent the case back for a further proceeding, the fact that the judgment was reversed could have had but one meaning, which was that on

the evidence as it then stood the trial court's denial of recovery to the plaintiffs was erroneous except, as aforesaid, for those items expressly approved or not mentioned. All of the expenditures in question, both as to amount and manner in which paid, had been pleaded and specifically proved. The defendants had not offered any substantial countervailing testimony. They sought to avoid liability on the theory that they had acted honestly and in accordance with the customary practices theretofore prevailing in Elliott County, that the expenditures had been made for lawful purposes, and that the county had got its money's worth. Testimony to that effect, in general terms, was in the record on the first appeal.

Our comment that "we have no evidence before us which in any respect informs us whether this money was spent, in the many instances testified to by the county court clerk, for a lawful county purpose" [4] necessarily rejected, as insufficient to rebut the prima facie case established by the plaintiffs, defensive testimony stating in general terms that all of the expenditures made during the several years in question were expenditures that could properly and legally have been authorized in the first place. Hence the most that could reasonably have been inferred from our first opinion was that through further audit some amount

of effective rebuttal might and probably would be established. In the ordinary case a defendant would not be given such consideration. His failure to refute the plaintiff's prima facie case in the time and manner provided in the trial proceeding would be held final and fatal. In this instance, however, mindful of the circumstance that the irregularities committed by the defendants were the product of ineptitude rather than moral delinquency, and reluctant to see them subjected to any more personal liability than reasonably required by the law, we directed a further audit.

A meaningful audit, says the trial court, cannot be made. And surely it is time for an end to this long and vexatious controversy. The evidence in the record today is the same as it was before, with the additional fact of the fiscal court's ratifying resolution of September 2, 1966. We now look to that evidence to determine the relief to which the plaintiffs are entitled as a matter of law.

*Item 1.* The salary increases for the first six months of 1950 were illegal, and so held in the first opinion. Cf. 385 S.W.2d at pp. 324, 325. Plaintiffs are entitled to recovery from the four recipients in the amounts above set forth.

*Item 3.* Same comment. Cf. 385 S.W. 2d at p. 325.

*Item 4.* Plaintiffs are entitled to recovery of $27,477.60, subject to credits for duplication, as follows:

(1) The county treasurer (Adkins), county judge (Davis), and magistrates Kitchen, Miller, Ison, Maggard and Binion and their respective sureties are liable jointly and severally for expenditures in excess of the budget during the term of office from 1950 to 1953, inclusive, totalling $24,076.51, subject to the following credits:

(a) Recovery of the payments listed in Item 1, totalling $925.02, will reduce the R & B budgetary overexpenditure for the fiscal year 1949–50 by that amount.

4. 385 S.W.2d at p. 326, referring to item 8.

| Fiscal year | Warrant No. | | Amounts | |
|---|---|---|---|---|
| 1949–50 | 2462 | (Davis) | $ 50.00 | |
| | 2453 | (Kitchen) | 12.00 | |
| | 2454 | (Ison) | 16.00 | |
| | 2498 | (Ison) | 18.00 | |
| | 2456 | (Miller) | 12.00 | |
| | 2468 | (Miller) | 6.00 | |
| | 2499 | (Miller) | 30.00 | |
| | 2455 | (Maggard) | 6.00 | |
| | 2433 | (Binion) | 27.80 | |
| | 2473 | (Binion) | 6.00 | $  183.80 |
| 1950–51 | 2655 | (Davis) | 79.64 | |
| | 2940 | (Davis) | 50.00 | |
| | 2968 | (Ison) | 65.00 | |
| | 2401 | (Binion) | 106.50 | |
| | 2660 | (Binion) | 65.25 | |
| | 2990 | (Binion) | 12.00 | |
| | | | | 378.39 |
| 1951–52 | 3241 | (Davis) | 15.40 | |
| | 3048 | (Kitchen) | 95.00 | |
| | 3047 | (Miller) | 126.00 | |
| | 3218 | (Miller) | 30.00 | |
| | 3045 | (Maggard) | 36.00 | |
| | 3129 | (Maggard) | 198.00 | |
| | 3042 | (Binion) | 318.33 | |
| | 3071 | (Binion) | 171.25 | |
| | 3216 | (Binion) | 75.00 | 1,064.98 |
| 1952–53 | 3612 | (Davis) | 23.88 | |
| | 3455 | (Ison) | 420.00 | |
| | 3449 | (Miller) | 300.00 | |
| | 3478 | (Miller) | 300.00 | |
| | 3636 | (Miller) | 225.00 | |
| | 3655 | (Miller) | 92.00 | |
| | 3772 | (Miller) | 100.00 | |
| | 3796 | (Miller) | 200.00 | |
| | 3484 | (Maggard) | 36.00 | |
| | 3453 | (Binion) | 389.17 | |
| | 3485 | (Binion) | 8.00 | 2,094.05 |
| 1953–54 | 3870 | (Miller) | 381.00 | |
| | 3909 | (Miller) | 100.00 | |
| | 3966 | (Miller) | 718.34 | 1,199.34 |

(c) Our first opinion having held that the transfers from the R & B Bond Sinking Fund to GF were not illegal, cf. 385 S.W.2d at p. 327, they have the effect of reducing the GF budgetary overexpenditures in the following amounts:

| Fiscal year | Overexpenditure | Credit | Balance |
|---|---|---|---|
| 1949–50 | $1,684.85 | $ | $1,684.85 |
| 1950–51 | 2,685.32 | 2,000.00 | 685.32 |
| 1951–52 | 1,208.58 | 3,040.00 | None |
| 1952–53 | 1,214.53 | 2,615.56 | None |

(d) Recovery of the sums hereinafter held collectible under Item 8 will reduce the budgetary overexpenditures as follows:

| Fiscal year | GF credit | R & B credit |
|---|---|---|
| 1949–50 | $ 275.00 | $1793.75 |
| 1950–51 | 579.40 [5] | 7621.40 [5] |
| 1951–52 | | 3772.99 |
| 1952–53 | | 3965.01 |

(2) The county treasurer (Adkins), county judge (Davis), and Magistrates Cox, Skaggs, Lyons, and Binion [6] and their respective sureties are liable jointly and severally for expenditures in excess of the budget during the year 1954 (last half of fiscal year 1953–54), totalling $3,401.09, subject to the following credits:

(a) $2,500.00, representing that portion of the R & B Bond Sinking Fund transferred to R & B during the fiscal year 1953–1954.

(b) Recovery of the sums hereinafter held collectible under Item 8 will reduce (and hence eliminate) the budgetary overexpenditures for the fiscal year 1953–1954 as follows:

GF credit: $973.76          R & B credit: $4,355.67

———————◆———————

*Item 8.* Of the total figure of $27,286.90 paid out between March 20, 1950, and December 23, 1953, without formal authorization, we find that $1,388.-13 [7] represents duplication of payments recoverable under Item 3, $503.00 represents payments to the sheriff which our first opinion held were not illegal, cf. 385 S.W. 2d at p. 328, $25.00 has been repaid by V. H. Redwine, and $1,281.94 represents expenditures that the evidence failed to prove invalid.[8] These deductions, totalling $3,198.07, leave a balance of $24,088.83, for which the defendants Adkins, Davis,

5. The treasurer's report for October of 1950 is not in the record. Of the five invalid warrants issued during that month we have identified three as paid out of R & B (Nos. 2669, 2671 and 2672) and have credited the others (Nos. 2670 and 2673) to GF.

6. The appellant Fannin also was a member of the fiscal court during 1954, but there is no claim against him pending in this court.

7. Davis, $23.88 (No. 3612); Kitchen, $95.00 (No. 3048); Binion, $171.25 (No. 3071); and Miller, $1098.00 (Nos. 3636, 3655, 3772, 3796, 3870 and 3909).

8. Hutchinson, $1102.14 (Nos. 2638, 3160 and 3161); W. D. Rice, $29.80 (No. 3238); Watt Waggoner, $50.00 (No. 3665); Chester Stephens, $50.00 (No. 3667); and Roy Kidd, $50.00 (No. 3668).

Kitchen, Miller, Ison, Maggard, Binion, and their respective sureties are jointly and severally liable.

From a recapitulation of the foregoing figures it will be noted that a complete satisfaction of the claims listed under Items 1, 3 and 8 will more than offset, and thus eliminate, all of the liability for budgetary overexpenditures in Item 4 excepting GF for fiscal years 1949–50 and 1950–51 and R & B for fiscal year 1951–52.

■ In the brief for appellees it is contended that the ratifying action by the fiscal court on September 2, 1966, brings Item 8 squarely under the principle of Flowers v. Logan County, 138 Ky. 59, 127 S.W. 512 (1910), that expenditures which would have been proper had they been duly authorized in advance may be ratified and made valid by the governmental body that could have authorized them in the first place. Without considering the question of whether such a ratification would be timely and effective under the facts of this case, we are of the opinion that there is a significant difference between the two cases. As already stated herein, there was evidence in the record on the first appeal in the form of blanket, generalized statements that all of the expenditures in question were made for lawful and proper purposes, and the original judgment so found. Our opinion is that this type of evidence is not sufficient to sustain a ratification. It will be observed that in the *Flowers* case Squire Flowers had reported to the fiscal court from time to time and had accounted in detail for "every dollar" he had expended in the county's behalf. "The burden was upon appellant to show a proper application of the money. No presumption is indulged in his behalf under such circumstances. * * * With the burden imposed on him to show satisfactorily the proper expenditure of the money, appellant has done that to the satisfaction of the trial court and to this court." 127 S.W. at p. 514. The record in this case contains nothing that resembles such an accounting.

In view of the time this proceeding has been in the hands of the courts we are of the opinion that it would be inequitable to allow interest prior to entry of final judgment as herein directed.

The judgment is affirmed in part and reversed in part with directions to enter a new judgment in conformity with this opinion.

All concur.