## Land et al. v. Lewis et al.

March 23, 1945.

S. Jewel Rice, Henry Jackson and Jay W. Harlan for appellants.

R. W. Keenon and Robert M. Odear, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This is a taxpayer's suit, prosecuted by L. M. Land et al. against S. Higgins Lewis, clerk of the Fayette County Court, his deputy, F. C. Foushee, the members of the Fiscal Court, and the sureties on the bonds of the clerk and the County Judge, seeking judgment for $10,-100, with interest, for the use and benefit of the county. It was consolidated with a suit filed by Fayette County and the County Judge against other members of the Fiscal Court and Foushee seeking a declaratory judgment with respect to the same matter and a recovery of certain sums paid Foushee. The plaintiffs in the first named action had intervened and moved for the consolidation. The court, with Honorable Ben D. Smith, of Somerset, presiding as Special Judge, ruled that the plaintiffs were not entitled to recover any judgment. No special declaration of rights was entered, but the ef-

fect of the judgment is the equivalent. The taxpayers prosecute the appeal against all the other parties.

Sometime before 1938, the Fiscal Court had considered putting in a new system of indexing the records of deeds, mortgages and similar instruments in the office of the County Court clerk (Sec. 1840c, Ky. Stats.), but found the cost would be between $75,000 and $120,000, which was regarded as prohibitive. In the early part of 1938, the Fiscal Court deemed it necessary to have some of the general indexes to the deeds and mortgages transscribed into new books as the old ones had become soiled and torn so as to be illegible in places. They had become, in the language of the statute to be considered, "obliterated, torn or in a ruinous condition." Sec. 1632, Ky. Stats. The indexes had also become inconvenient as they had been prepared in series covering four years each. Since the inauguration in 1928 of the system of merely filing chattel mortgages and making an abstract record of them (Sec.523a-3, Ky. Stats.) the Fiscal Court also determined to have a general index of that class of instruments prepared as there had never been such and the current book indexes had also become illegible in part.

It appears that a representative of the Works Progress Administration, better known as WPA, estimated the cost by the use of that agency to be $20,000. F. C. Foushee, who had been a deputy county court clerk for many years, appeared before the court and orally offered to prepare the chattel mortgage index for $4,500 and the general indexes of deeds, mortgages, etc., for $5,600, the work to be done outside of his office hours. The offer was orally accepted and he was directed to proceed with the work. It is, of course, conceded that such informal agreement was not binding as the Fiscal Court could speak only through its records. But the court included in the county budget for the year 1938-1939 the item of $4,500, and for the year 1939-1940 the item of $5,600. When the work had been done in each year, Foushee filed a claim for compensation, describing its character, and the Fiscal Court, by appropriate orders, directed that the claims be paid. If the Fiscal Court had authority originally to make these contracts it had the authority to make valid the defective and invalid form in which they had been entered into. As stated in the opinion of the trial court: "Records and orders were introduced and

filed showing the appointment of the Budget Committee, the recommendations and appropriations of the Budget Committee for the indexing in the amounts herein involved, the approval by the Fiscal Court of the recommendations and appropriations of the Committee, the two claims of F. C. Foushee for the amounts agreed upon were prepared, filed and presented to the Court, and the orders approving the bills and directing the payments thereof.''

We concur in the conclusion that these orders constitute a ratification and support the appellee's claim of a valid contract. Lawrence County v. Stewart, 287 Ky. 827, 155 S. W. 2d 446; Estill County v. Noland, 295 Ky. 753, 175 S. W. 2d 341.

These facts were clearly proven: (1) The general indexes to deeds, mortgages, etc., had been prepared during the course of many years to cover periods of four years, thus requiring the examination of a number of separate books; (2) these had become soiled, torn and illegible in many places; (3) there was no general index to the abstract records of chattel mortgages and the indexes to the several books had become obliterated and illegible in a considerable degree; (4) Foushee worked on the two jobs at night, on Sundays and holidays; he had expended the sum of $2,740 for stationery and assistants in preparing the new chattel mortgage indexes, leaving him as his individual compensation $1,760 covering eleven months time, and had expended $3,775 in preparing the new general indexes, leaving him $1,825 for his services for the year; (5) the sums allowed are reasonable; (6) that the work was done competently and in a very complete and excellent manner.

The appellants argue that the money paid for the new chattel mortgage indexes should be recovered into the treasury because the work was within the prescribed duties of the County Clerk, which are likewise the duties of his deputy, and his failure to have begun and currently kept up such an index constituted nonfeasance in office, and that the county has no power to pay either any additional sum for these services.

Section 513, Kentucky Statutes, which is general in its scope, requires county court clerks to keep a cross-index of recorded conveyances, mortgages, deeds of trust, leases and contracts. Section 523a-3, Kentucky Statutes,

part of the act of 1928 relating to the recording only of abstracts of chattel mortgages, requires the clerk to keep an index of the same "in the manner as required for pledges and mortgages of real estate." Let it be conceded arguendo that it was the duty of the clerk to keep a current general index, still no duty devolved upon this county clerk or his deputy to go back prior to his present term of office and make up a general index which should have been but was not kept up currently. Even so, we think the evidence showed that the indexes in each book were in such bad condition that the Fiscal Court was authorized, under Section 1632, Kentucky Statutes, to pay for having them transcribed into new books. We do not think it is contrary to the intent of the statute that the index of each book should have been transcribed into other separate books and not in one or more books as a general index.

The second paragraph of Section 1632, Kentucky Statutes, relates to the restoration or making up new records of obliterated and illegible records in the offices of the county clerks in counties other than those having an official indexer. It provides that when any books of record of clerks or surveyors shall have become "obliterated, torn or in a ruinous condition," they may be ordered transcribed into new books and "the fiscal court * * * shall make a reasonable allowance for such service to the commissioner or other person so performing same and to be paid out of the county levy." The legislative history of this section of the statutes is that substantially the same language as the second paragraph constituted all of the section prior to 1912. In that year an Act (Chapter 107) concerning official indexers (other than county clerks) repealed Section 1632 and substituted as the entire section what is now the first paragraph as published in the 1936 edition of the Kentucky Statutes. This left other counties with no provision for replacing obliterated records. In 1918, the original provision was put back in the statutes as paragraph 2 of the section. Chapter 129, Acts of 1918. We cannot agree with the appellant's argument that Section 1840c, Kentucky Statutes, an Act of 1922 (Ch. 120), superseded Section 1632. It has reference only to the inauguration of a new system of indexing the records, for which provision is made for the letting of a special contract. After such a new system has been inaugurated, it then becomes the duty

of the county clerk to keep it up. The present system has been followed for many years in Fayette County and the work involved in these claims was merely preparing new indexes under the same plan.

Section 1632, Kentucky Statutes, was construed in Marion County v. Spalding, 141 Ky. 27, 131 S. W. 1019. We held that the circuit court had authority under another statute giving it the same jurisdiction over books and records in the circuit clerk's office as is conferred upon county courts by Section 1632 with respect to the records enumerated in it, and that the circuit court had authority to have a general index made of all its civil judgments. There had never been such a general index, but each order book had its own index and these had become worn and defaced. The statute was construed as not requiring that the record or books thus needing to be replaced should be transcribed in similar new books of the same kind and character, but it was within the discretion of the court to have those separate indexes made into a general one, including as a matter of necessary convenience all items of entry in the old indexes even though some of them were in good shape. That decision is fully applicable to the facts of this case.

While in this case the county court did not order the records to be transcribed, we think it was within the power and authority of the Fiscal Court to have the work done if it deemed it necessary under its general powers of managing the county's business, and had the specific authority to pay for the work when it had been done.

The foregoing construction of Section 1632, Kentucky Statutes, takes out of the case the argument of the appellants that the work was ex-officio the duty of the county court clerk and his deputy so that he could not lawfully receive special compensation therefor; also the argument that the amount received each year in excess of the constitutional limitation of $5,000 upon officers' compensation was recoverable. Const. sec. 246. The statute contemplates an independent contract for this work and such was made. The situation is different from one where a clerk or other officer merely does something, even under statutory or official requirement, which may be regarded as incident to or is of the same character as a previous official duty. Cf. Morgantown

Deposit Bank v. Johnson, 108 Ky. 507, 56 S. W. 825; Saufley v. City of Hazard, 209 Ky. 795, 273 S. W. 488. That rule does not apply where an officer or employee performs extra services outside of official duties and with which they have no affinity or connection and which do not interfere with his official duties. In such an instance, he may be employed to perform the services and is entitled to compensation provided for it. Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 699. In that case we held it competent for the fiscal court to employ the county attorney as a special commissioner to settle the sheriff's accounts and also in the settlement and compromise of the bonded indebtedness of the county, the statutes at the time not prohibiting it and the duties of the office not embracing either class of such special services. The general rule is therein expressed: "Where an officer or employe performs extra services outside of official duties and with which they have no affinity or connection, and which do not interfere with his official duties, he is entitled to compensation."

As we have stated, the statutes specially provided for a contract and reasonable compensation to be made for these services. This manifests the intention that they should be regarded as outside the official duties of the county court clerk. There was no legal bar against this contract, once it was ratified according to the formalities of the law. On the contrary, one who is familiar with the records and who has had long experience in similar work was perhaps better qualified to render more efficient service than would have been done by another without experience. These conditions destroy the further argument of the appellants that the employment violates public policy and was opposed to the general welfare of public interests, such as was condemned in Board of Education of Wolfe County v. Rose, 285 Ky. 217, 147 S. W. 2d 83, 132 A. L. R. 969.

Wherefore the judgment is affirmed.

Whole Court sitting.