Robert H. BREEDEN, Director of the Oklahoma Industrial Development and Park Department; Carl Williams, State Director of Finance; Joe Bailey Cobb, State Auditor, et al., Plaintiffs in Error,

v.

George NIGH, Defendant in Error.

No. 42761.

Supreme Court of Oklahoma.

June 11, 1968.

G. T. Blankenship, Atty. Gen., Brian H. Upp, Asst. Atty. Gen., for plaintiffs in error.

Hirsh, Johanning & Hudson, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the constitutionality of paragraph (b) of Section 4 of House Bill No. 943 (S.L.1967, Chap. 303, pps. 494, 495,

Title 74 O.S.1967 Supp. Sec. 1104(b) which said Bill purports to amend in several respects, the Oklahoma Resources Development Act of 1965 (Title 74 O.S.1965 Supp. Secs. 1101–1120, both inclusive).

The 1965 Act created the Oklahoma Industrial Development and Park Commission, hereinafter referred to merely as the "Commission", Paragraph "(a)" of its Section 4 (Sec. 1104, Title 74, supra) provided that said Commission should consist of one member from each of Oklahoma's six congressional districts, and a member at large, all to be appointed by this State's Governor. Paragraph "(b)" of the same section provided:

"In addition to the seven appointive members * * *, the Lieutenant Governor of the State * * * shall be an ex-officio, non-voting member * * *" Paragraph "(d)" of said section provided, among other things, that, from the Commission's membership, the Governor should appoint its Chairman, Vice-Chairman and Secretary.

The 1965 Act prescribed no specific duties for the Lieutenant Governor as an "ex officio" member of the Commission, nor did it provide any salary for him as such.

House Bill 943, supra, as passed by the First Regular Session of the Thirty-First Legislature early in May, 1967, by operation of its paragraph "(a)" of Section 4, reduces the number of the Commission's appointive members from seven to six, by making no provision for an "at large" member. It also provides that the Lieutenant Governor shall not only serve "ex officio as a member" of the Commission but it amends the 1965 Act by providing that he also serve as its Chairman. Said Section's paragraph "(c)" further amends the 1965 Act by providing for the Commission members' claims for per diem and travel pay " * * * to be paid on approval of the Chairman * * *." The Bill's Section 4(b) is as follows:

"*The Lieutenant Governor of the State of Oklahoma as Chairman of the Commission*, shall be reimbursed for official travel on behalf of the Commission for

actual and necessary expenses, and *shall be paid compensation in the amount of Six Thousand Dollars ($6,000.00) annually, payable monthly, for services rendered as Chairman*, from monies appropriated to the Commission." (Emphasis added).

When this Bill went to the office of the Governor for his approval, he asked the State's Attorney General for an opinion concerning its constitutionality—one of his specific questions being directed at the above quoted provision of its Section 4(b) for the Lieutenant Governor to receive a salary as the Commission's Chairman. The query evidently took into consideration the fact that the current four-year term of the present Lieutenant Governor, George Nigh, began in January, 1967 (previous to passage of the Bill) and inferentially alluded to our State Constitution's Art. VI, Sec. 34 and Art. XXIII, Sec. 10, containing respective prohibitions against changing the "compensation," "salary or emoluments" of certain State officers, and "any public official," *during* their terms of office. Evidently in contemplation of this Court's previous opinions to the effect that such compensation, salary or emoluments could not, under those sections, be increased in payment for additional duties, legislatively prescribed for such officials, *"that are germane"* to their previously prescribed regular duties, an additional query was addressed to the Attorney General as to whether the additional duties prescribed for the Lieutenant Governor, as the Commission's Chairman, by H.B. 943, would constitute "non-germane" functions, so as to entitle him to the six thousand dollar annual salary specified therein. In an opinion dated May 9, 1967, the Attorney General answered this question in the negative. In the course of arriving at this conclusion, the Attorney General suggested that, under the 1965 Act then in force, there was "no legal reason * * *" why the Lieutenant Governor *could not be appointed* the Commission's Chairman even though he was then only an ex officio member, and the opinion writer used this represented susceptibility of the Lieutenant Governor to such

an appointment, to support his opinion that the House Bill's requirement (that the Lieutenant Governor be the Commission's Chairman) added no new "non-germane" duties to those already prescribed for said official by the law then in effect.

Upon receiving the above described Attorney General's opinion, the Governor vetoed H.B. 943, but, on May 10, 1967, the Bill was enacted by overriding his veto.

When the Bill went into effect 90 days thereafter Lieutenant Governor Nigh declined the Governor's attempted appointment of him, as the Commission's Chairman; but at the Commission's next meeting on September 13, 1967, Nigh unsuccessfully sought to take his seat as the Commission's Chairman *pursuant to, and by operation of H.B. 943*. The same day, however, the Commission's Director, Robert H. Breeden, addressed a request to the Attorney General for an opinion as to whether Nigh was entitled to become the Commission's Chairman under H.B. 943.

According to the allegations of the petition Nigh thereafter filed on September 18, 1967, to commence the present action, the Commission's appointive members would not allow Nigh to assume his duties as Chairman, and the Commission's Director, Robert H. Breeden, would not place his name on the Commission's payroll for monthly payment, beginning August 10, 1967, of the six thousand dollar per year salary prescribed by H.B. 943 for that position. In said petition Nigh alleged that there was then due and owing him salary, at that rate, for the period from August 10, 1967, to August 31, 1967; and he prayed for both an ancillary restraining order against those members, to prevent them from interfering with his performance of his duties as the Commission's rightful Chairman, and for an alternative writ of mandamus compelling Mr. Breeden to put him on the Commission's payroll for payment of the salary therein shown, and compelling other defendants in error as defendants (hereinafter referred to by that trial court designation) to then certify such payroll for payment and

to issue a warrant payable to said plaintiff from the State Treasury in the amount of said salary.

The next day, September 19th, the trial court issued an ex parte ancillary restraining order against the defendants' interfering with plaintiff's assumption of his duties as the Commission's Chairman, and on the same day, the Attorney General issued an opinion, in answer to Mr. Breeden's afore-mentioned request, advising that, by virtue of H.B. 943, the Lieutenant Governor *was* then the Commission's Chairman " * * effective August 10, 1967." The next day, September 20th, the trial court also issued the alternative writ of mandamus plaintiff had prayed for.

The "Return" the defendants thereafter filed in this action to the trial court's alternative writ of mandamus, admitted the facts alleged in plaintiff's petition, except his alleged entitlement to the salary "and/or per diem" prescribed by H.B. 943. It specifically denied that plaintiff was entitled to such benefits on the ground of the unconstitutionality, under the afore-mentioned sections of the Oklahoma Constitution, of said Bill's provisions for their payment.

Thereafter, on October 16, 1967, defendants apprised the trial court of the Attorney General's last above-mentioned opinion in an answer they filed to the Court's afore-mentioned temporary restraining order, and, a week later, the Court terminated said order.

Thereafter on November 3, 1967, the trial court entered its judgment, in favor of plaintiff, issuing the writ of mandamus he had prayed for against defendants. After the overruling of their motion for a new trial, defendants perfected the present appeal.

■ Their arguments for reversal of the judgment are advanced under two propositions, which we will consider in reverse order. Under the second one, defendants argue, in substance, that the court erred in adjudging that the additional duties H.B. 943 prescribes for plaintiff, as Chairman of the Commission, are non-germane and therefore that said Bill's provision for the annual salary therein specified to be paid him for the performance of those duties is not unconstitutional under Art. VI, Sec. 34, and Art. XXIII, Sec. 10, of the Oklahoma Constitution. They contend, in substance, that the change effected by H.B. 943 in plaintiff's position, from that of a non-voting ex officio member of the Commission (under the 1965 Act) to that of Chairman of said Commission, entails no additional duties that are so "foreign" to his previous duties as to be considered "non-germane" under the rule discussed and applied by this Court in the cases of Phelps v. Childers, 184 Okl. 421, 89 P.2d 782; Bond v. Phelps, 200 Okl. 70, 191 P.2d 938, and others cited by plaintiff.

The only new duties defendants mention the Lieutenant Governor as having under H.B. 943 that he did not have under the 1965 Act is that of voting and they seek support for their argument by reverting to the hypothesis suggested in the hereinbefore described Attorney General's opinion of May 9, 1967, that: If plaintiff, while solely an ex officio member of the Commission (before the effective date of said House Bill's amendment of the 1965 Act) had become the Commission's Chairman by appointment of the Governor, he would, as such Chairman, have had to vote at meetings of the Commission in the event the vote of its members had been tied (or dead-locked three to three).

We decline to express an opinion as to whether plaintiff might have validly served as Chairman of the Commission, if he had accepted the Governor's attempted appointment of him to that position prior to the effective date of H.B. 943. A more significant fact than this, we think, is that—unlike the present law— the 1965 Act contained no *requirement* that the Lieutenant Governor be the Commission's Chairman, or that he discharge any of the functions of such a Chairman, including the specifically mentioned one of approving reimbursement of

appointive members " * * * for their necessary living and travel expenses resulting from trips approved by the Commission outside the State * * * " described in Section 4(c), supra.

There being no requirement, either in our statutes or Constitution, for the Lieutenant Governor to be Chairman of the Commission prior to the effective date of H.B. 943, plaintiff was free to reject the proffered appointment of him as such. Not then being a part, or within the scope, of plaintiff's official, or regular, duties, he could not have been compelled to perform the duties of Chairman in the absence of his acceptance of such appointment. See Groesbeck v. Auditor General (Fuller), 216 Mich. 243, 184 N.W. 870, 21 A.L.R. 249, 253. Furthermore, the fact that, by the 1965 Act, Nigh became an ex officio member of the Commission by virtue of his holding the office of Lieutenant Governor, did not merge the two positions into one. See State v. Laughton, 19 Nev. 202, 8 P. 344, 345. Nor does the provision in the new law (H.B. 943) for plaintiff's compensation for his services as Chairman of the Commission constitute an increase in his salary, compensation, or emoluments as Lieutenant Governor—as the trial court correctly decided.

█ While some of plaintiff's undelineated functions solely as an ex officio member of the Commission—whatever they were —prior to the effective date of H.B. 943, may have been somewhat similar, or not, altogether "foreign", to some of those performed by the Commission's appointive members—and we notice that in at least one state a distinction has been recognized between an officer's regular duties and his "ex officio" services, as concerns increasing his compensation therefor (See Macon County v. Abercrombie, 184 Ala. 283, 63 So. 985), we think there must be such a difference in those functions and the administrative and/or executive duties of the Commission's Chairman under H.B. 943, that the two kinds of services may not be correctly held "germane" to each other for the purpose of applying the Constitution's provisions injected into the present controversy. In this connection see the cases quoted and discussed in Phelps v. Childers, supra. That additional duties a public official may be *required*, by new legislation, to perform, may in some manner be related to official duties he was already required to perform, without being "germane" to them within the rule, is indicated by the descriptions of those duties appearing in the cases already referred to herein and others noted in the annotation to Land v. Lewis, 299 Ky. 866, 186 S.W.2d 803, 159 A.L.R. 601, beginning at p. 606 of the latter.

Nor is the present case analogous to Hunt v. Logan, Okl., 390 P.2d 918, where previous to the passage of the Bill prescribing additional compensation for certain so-called "additional" duties of this State's Insurance Commissioner, such duties had become "regular" duties of said official. Here previous to the effective date of H.B. 943, the duties therein specified for the Lieutenant Governor, as Chairman of the Commission, had never been imposed upon that official by law either as extra duties or regular duties.

Under their "PROPOSITION NO. I," defendants urge us to overrule "THE GERMANE, NON-GERMANE RULE" as being constitutionally unsound. They ask us to "re-examine" the rule in light of the wording "of our constitutional provisions," and they express the belief that, when we do, we'll agree with their position that we should overrule our previous opinions relied on by plaintiff. The only support advanced for their argument, however, is the fact that Art. XXIII, Sec. 10, of our Constitution is worded rather differently from similar provisions in certain other state constitutions and that dissenting opinions were filed in Phelps v. Childers, supra; Bond v. Phelps, 200 Okl. 70, 191 P.2d 938, and Aubrey v. Huser, 201 Okl. 60, 201 P.2d 249, of which a former Attorney General's opinion seems to approve.

We find insufficient justification in defendants' arguments for departing from a rule that has stood the test of time and

many attacks in this, and other jurisdictions, and seems to be accepted and applied by a majority of the courts of last resort. In this connection, see 43 Am.Jur., "Public Officers", Sec. 349, footnote 19, Sec. 353, footnote 364, and Sec. 371. We have thoroughly examined and studiously considered all of defendants' arguments in this case and find them insufficient to discharge their burden of overcoming the presumption in favor of the constitutionality of Sec. 4(b) of House Bill 943 (74 O.S.1967 Supp., Sec. 1104(b)), supra, and the trial court's judgment as to its constitutionality. It is well settled in this jurisdiction, as held in Spearman v. Williams, Okl., 415 P.2d 597, that:

> "The Oklahoma Constitution vests in the Legislature the supreme power to enact laws to meet the needs of the State and its acts should be upheld *unless plainly and clearly* within the express prohibitions and limitations fixed by the Constitution. *There is a presumption that the act is constitutional.*" (Emphasis added).

And as there indicated, this Court's sole function is to determine the validity of the challenged law. As we there quoted from Oklahoma Capitol Improvement Authority, Okl., 355 P.2d 1028:

> "In construing the constitutionality of a statute, the Supreme Court is not authorized to consider its propriety, desirability, wisdom, or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the Act."

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

JACKSON, C. J., and DAVISON, WILLIAMS, BERRY, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., dissents.