Attorney General Loving has received your letter of March 30, 1994, requesting an opinion addressing, in effect, the following question:
 What is the effect of 74 O.S. 1804(B) (1991) on the ability of the Lieutenant Governor to seek an elected public office?
Because your question may be answered by reference to controlling statutes and case law, we are responding by way of an informal opinion which represents the opinion of the undersigned counsel.
Your letter specifically references 74 O.S. 1804(B) (1991). Section 74 o.s. 1804(B) is a part of the statute which, inter alia, establishes the membership of the Oklahoma Tourism and Recreation Commission (hereafter "the Commission") and provides for the appointment and tenure of members of the Commission. Specifically, Section 74 O.S. 1804(B) states: "No member of the Commission shall seek election to a federal, state, or county office while serving on the Oklahoma Tourism and Recreation Commission. n Your inquiry addresses the question what effect Section (B) has upon your ability to seek an elected public office.
A review of the chronological order of the enactment of Sections (A) and (B) of Section 1804 is an appropriate initial undertaking here.
1. Section (A) provides, inter alia, that "The Lieutenant Governor shall serve as an ex officio voting member of the Commission. n The other members of the Commission are all individuals appointed by the Governor. Id. The relevant part of Section (A) establishing the Lieutenant Governor's ex officio service on the Commission was added as an amendment to Section 1804(A) in 1987. Until 1980 the Lieutenant Governor had been Chairman of the Commission but the office's position as Chairman was statutorily deleted in 1980.
2. Section (B), requiring resignation of members upon seeking election to a public office, was added by amendment to the statute in 1983 during the time the office of Lieutenant Governor had no ex officio status. When the office of Lieutenant Governor was restored to the Commission in 1987, the provision requiring resignation of a "member" was in the statute.
A review of the history of the 1987 amendment does not reveal any information in the drafting process which sheds light on your inquiry. Thus sections (A) and (B) and their impact upon your ability to seek elected office must be analyzed according to the rules of statutory construction and relevant judicial authority with the primary goal being to determine the intent of the legislature in its enactment of the statute as a whole. Clifton v. Clifton, 801 P.2d 693
(Okla. 1990).
While the above two provisions could be construed to create potential conflict within Section 1804 as to whether the Lieutenant Governor should be considered a "member" for purpose of the application of the restriction of Section (B), a reasoned construction of those two sections demonstrates that none is present. Rather, the two sections may be harmonized, a preeminent goal of any statutory construction. Independent School Dist. No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, 612 P.2d 719
(Okla. 1980).
For the purpose of statutory construction, an important distinction is made between the membership of other individuals serving on the Commission and membership of the office of the Lieutenant Governor on the Commission. That distinction is readily apparent in that the membership of the office of the Lieutenant Governor is "ex officio"; it is the office of the Lieutenant Governor, not an individual, which holds the membership on the Commission. Ex officio is defined as "From office; by virtue of the office. . . ." Black's Law Dictionary 516 (5th Ed. 1979).
A second term used in the 1987 amendment is also significant. The statute states that the Lieutenant Governor shall serve on the Commission. The term "shall" is construed to indicate that the duty imposed is mandatory. TIB Corp. v. Edmondson, 630 P.2d 1296 (Okla. 1981). Only if such construction does not further legislative intent may the term be otherwise con-trued. Here, there is no legislative history nor reason to believe the legislature did not intend to make this duty, which it created by special amendment, mandatory.
That ex officio service on the Commission by the Lieutenant Governor is mandatory and thus different from optional service which individual members of the Commission undertake when appointed, may also be inferred from the decision of the Oklahoma Supreme Court in Breeden v. Niah, 441 P.2d 981
(Okla. 1968). In that case a controversy arose when an amendment to Section 1804 (repealed later in 1980) made the Lieutenant Governor, who was already statutorily a member of the Commission, the chairman of the Commission and provided for a six-thousand dollar salary. The then chairman of the Commission asserted that the Lieutenant Governor could not receive the additional salary due to a certain constitutional provision limiting the salary of elected officers. The chairman cited as authority an opinion of the Attorney General which opined that, prior to the statutory appointment as chairman, the Lieutenant Governor could have served as chairman by election, a voluntary post, and thus would not be entitled to additional salary simply because the post was made mandatory. The court explicitly disagreed with the opinion of the Attorney General. stating there existed a distinction between regular duties of an individual which could be assumed or rejected voluntarily and those which were mandated by the holding of the office itself. Id. at 985. The Lieutenant Governor, according to the court, was entitled to serve as chairman and receive the additional salary. This reasoning supports the construction that the Lieutenant Governor, when serving in a mandatory position on the Commission, is in a different position than an individual, voluntary member.
In summary, because
(1) service on the Commission is a requirement of the office of Lieutenant Governor and
(2) service by the Lieutenant Governor on the Commission is mandatory and,
(3) Breeden v. Niah, supra, articulates the unique nature of this mandatory service, it is this writer's conclusion that the Lieutenant Governor is not a "member" of the Commission for purposes of the application of Section B requiring voluntary, appointed individual members to resign from the Commission in order to seek election to public office.
to determine otherwise would lead to absurd construction of the statute and failure to give effect to the legislative intent which mandated that the office of the Lieutenant Governor have, as one of its duties, service on the Commission, independent of service by individuals appointed by the governor provided in Section 1804. Such absurdity must be avoided in statutory construction. Ledbetter v. Oklahoma Alcoholic Beverage Laws enforcement Com'n,764 P.2d 172 (Okla. 1988).
At least three absurdities may arise from construction of the statute to include the office of the Lieutenant Governor as a "member" who must resign upon seeking election to another office. First, if the Lieutenant Governor were to resign from the Commission, but not his or her office, there would be no way to fill a vacancy on the Commission as the position is mandated to be held by the Lieutenant Governor.
Second, a resignation from the Commission would violate the mandatory obligation of the Lieutenant Governor to serve on the Commission. Surely the legislature could not have intended the absurd result that the Lieutenant Governor would have to resign from office as Lieutenant Governor in order to run for elected office, including even to run for reelection to the office of Lieutenant Governor. Moreover, such a requirement would raise a serious equal protection question under the United States Constitution, as there is no requirement that other state officers resign their "ex officio" memberships on numerous boards and commissions in order to run for election to the same or another office. See e.g., 68 O.S. 2864 (1991) (establishing the membership of the Board of Equalization). See also Shell Pipe Line Co. v. Robinson, 66 F.2d 861 (lOth Cir. 1933) (construction of statute so as to render it unconstitutional must be avoided if a constitutional construction is possible).
Third, a requirement of a resignation could lead to the anomalous result of a Lieutenant Governor seeking reelection to the same office having to resign from the Commission, thus creating a temporary vacancy, possibly being filled again by the same person forced to vacate the position on the Commission. Such a possibly temporary situation occasioned by requiring the Lieutenant Governor to resign from either the Commission or his or her office does not seem to have been envisioned by the legislature and is contrary to the purpose of the amendment to the statute providing that the office of the Lieutenant Governor shall serve on the Commission as a voice independent of members appointed by the governor. Thus, continual service in the "ex officio" status is permissible, even though the Lieutenant Governor is seeking elected public office.
While not necessary to answer the question you have posed, even assuming that the Lieutenant Governor is a member of the Commission for purpose of application of Section (B), it arguably cannot be applied to prevent him or her from seeking election to a federal, state or county office if the Constitutional or statutory requirements of the office which he is seeking are determined to be exclusive and not subject to the addition of qualifications such as resignation from office. See Cornell v. McAllister, 249 P. 959, 961 (Okla. 1926). Because you have not identified a specific office, further analysis of the effect of this rule of law is not possible.
In conclusion, for the above stated reasons, it is the opinion of the undersigned counsel that 74 O.S. 1894(B) (1991) has no effect on the ability of the Lieutenant Governor to seek election to public office while fulfilling his or her mandatory duty to serve in an "ex officio" capacity on the Commission.
(Gretchen G. Harris)
(candidate/campaign/election/public office/conflict)